Bernard A. Dolan, Appellee, v. George Keppel, Appellant.

**DOMICILE:** Insufficient Residence. Evidence tending to show
1  residence in this state held to be overcome by counter evidence
   of the taking up of a homestead in another state, and of long
   continued absence from this state.

**PROCESS:** Insufficient Evidence of Agency. Service on an "agent"
2  may not be sustained, either on naked evidence (1) that the
   alleged agent did, at times, do or perform certain things or
   acts for the alleged principal,—i. e., collected rents—or (2) that
   the alleged agent was "in charge of or looked after said build-
   ing." *The authority of the alleged agent must be· shown.*
   (Sec. 3532, Code, 1897.)

**PROCESS:** Actions "Growing out of" Agency. An action for
3  personal injury, based on the alleged negligence of an owner
   in *constructing* a porch without a railing, may not, within Sec.
   3532, Code, 1897, be said to *"grow out of"* or "be connected
   with" an agency which simply authorized the agent to *"be in
   charge of and look after"* said building.

**APPEARANCE:** Special (?) or General (?) Appearance. An ap-
4  pearance "for the sole purpose of attacking the jurisdiction of
   the court" is not converted into a *general* appearance because
   the defendant embraced in his application to quash the service
   a showing that the attachment writ had been unlawfully
   issued. (Sec. 3541, Code Supp., 1913.)

*Appeal from Lee District Court.*—John E. Craig, Judge.

October 26, 1920.

Defendant, by special appearance, challenged the juris-
diction of the court to enter judgment. On hearing,
jurisdiction so to do was sustained, and judgment entered
on default. Defendant appeals.—*Reversed.*

*James S. Burrows,* for appellant.

*Hughes & Dolan,* for appellee.

LADD, J.—The petition, filed December 31, 1919, alleged that, on December 14th preceding, plaintiff, on invitation of one Williams, visited the home of the latter in the second story of a building belonging to defendant, and, on departing, stepped from the porch about six feet to the frozen ground below, and was seriously injured. The negligence charged is that of maintaining the porch without railing or other protection; and it is stated that, owing to the lateness of the hour (6:30 P. M.), plaintiff could not see, and was without fault. The return of service on the original notice, in the usual form, on defendant, recites that it was served "by reading the same and delivering a true copy there to Albert Keppel, his agent in charge of the premises" (describing them). On the same day, a writ of attachment was sued out, on the allegation that defendant was a nonresident of the state, and levied on the house and lot where the injury occurred; and due notice was given to the persons in possession. On January 13, 1920, the defendant, by his attorney, appeared specially, "for the sole purpose of attacking the jurisdiction of the court," on the grounds: (1) That defendant is a resident of the city of Keokuk, and no notice was served on him; (2) that Albert Keppel was not the agent of defendant; (3) "because, the defendant being a resident of the state of Iowa, the attachment in this action has been issued without authority of law;" and (4) "because the action does not grow out of, nor is it connected with, any business of an agency." The court ruled that it had acquired jurisdiction, and, as defendant failed to appear or answer, entered judgment by default.

I. The evidence was such as to sustain the finding that defendant was a nonresident, at the time the notice was served on the alleged agent. True, his mother and his brother, Albert, made affidavit that defendant had been continuously a resident of Keokuk, except 4 years at Ames, for the 20 years last past, but both testified, when brought

*Margin note:* 1. DOMICILE: insufficient residence.

into court for cross-examination, that defendant was unmarried; that he pursued a course of studies during 4 years at Ames, and later studied 2 years in Florida. Albert swore that "he usually spends two weeks or a month visiting in Iowa of late years;" that, many years ago, he settled on a government homestead in Oklahoma, and lived on it there for 3 or 5 years, long enough to prove up; that he is not farming the land; that "he is quite a traveler;" that "he lives with his mother when he comes home," in Keokuk; that "he is now near Duvald, Oklahoma;" and that, "when away from that place, his mail comes from there to Keokuk, Iowa." His mother testified that "he is now at Wichita, Texas, * * * selling oil leases. He has lived at Duvald;" and further, that "he comes to Keokuk three or four times a year, and stays a week or two, or a month:" stays with her, though he "gets his meals at Albert's sometimes."

"I receive mail addressed to George Keppel all the time. I think George bought that farm. We gave him the money to buy it. By the court: Q. Does George make his home with you? A. Yes, sir. Q. He always makes his home with you? A. Yes, sir, when he is in Keokuk. Q. Does his mail all come to you? A. His mail all comes to us. Q. Do you forward it back to Wichita, Texas? A. Yes, sir. Q. All of his mail does come to Keokuk? A. I don't know how much he gets. * * * He comes every year several times, and stays two or three weeks, or a month. He has always done that."

She ordinarily retained mail till he came. The old home where mother continued to live undoubtedly was still "home" to defendant, even though he was there but a week or more during the year, and had established his residence elsewhere. Many years previous, he had become a resident of Oklahoma by settling on a government homestead (*Des Moines Sav. Bank v. Kennedy*, 142 Iowa 272), and the evidence is insufficient to warrant the conclusion that he has since abandoned his residence in Oklahoma, which is presumed to have continued, and become a resident of this state. See *In re Estate of Colton*, 129 Iowa 542. That he

visited his mother frequently is not inconsistent with con-
tinuing his residence at Duvald, Oklahoma; and, notwith-
standing the witnesses' conclusions to the contrary, we are
of opinion that defendant was not shown to have been a
resident of Iowa at the beginning of this action.

II.    Conceding that he was a nonresident, he must have
been served with notice such as exacted by statute, to con-
fer jurisdiction.   The service relied on is that on Albert,
defendant's brother, "his agent in charge of
the premises."   Was this service sufficient to
give the court jurisdiction?    Section 3532
of the Code provides that:

**2. PROCESS: insufficient evidence of agency.**

"When a corporation, company or individual has, for
the transaction of any business, an office or agency in any
county other than that in which the principal resides, serv-
ice may be made on any agent or clerk employed in such
office or agency, in all actions growing out of or connected
with the business of that office or agency."

Albert Keppel testified, when called for cross-examina-
tion, that:

"The rent is paid on the property to different ones.
Whoever gets the money signs the receipts.   I do not sign
all the receipts for rent over there.   The receipts are signed
by different ones, but I guess I sign the majority of them."

His mother testified:

"I collect rent for him over at West Keokuk, and sign
the receipts 'C. Keppel.'   Sometimes one gets the rent and
sometimes another."

One Ireland made affidavit that he had occupied a part
of the building in question for more than a year, as a
butcher shop, and that he and other tenants occupying the
building pay their rent to Albert Keppel; that "said Albert
Keppel has charge and looks after said building."   It will
be noted that neither Albert Keppel, his mother, nor Ire-
land swore that defendant had ever authorized the collec-
tion or receipt of the rents, or that he had ever been paid
the same; and there was no other evidence bearing thereon,
save Albert's affidavit that he had never been the agent of

defendant. His cross-examination did not contradict this denial of agency, and was not necessarily inconsistent therewith. The mere doing of something, apparently for another does not alone warrant the conclusion that the doing is by authority, or as agent of that other. *Equitable Prod. & Stock Exch. v. Keyes,* 67 Ill. App. 460. The law, in the absence of evidence, indulges in no naked presumption that the relation of agency exists. On the contrary, a person, in what he does, is presumed to be acting for himself, and not as agent for another. *Vawter v. Baker,* 23 Ind. 63; 31 Cyc. 1638. As observed in *Gund Brewing Co. v. Peterson,* 130 Iowa 301: "Acts and declarations of an agent are not generally admissible to prove his authority." For all that appears, Albert may have been a mere volunteer, or he may have been acting under the lessee of the owner. Nor is it to be inferred from his being in charge that he was in possession, for it appears to have been occupied by tenants of someone. If Albert was in "charge of and looks after said building," there was no authority shown, unless it can be inferred from this that he was a representative of the owner. Moreover, if he was such agent, it does not follow that one whose duty it is to look after or have charge of a building is authorized to erect a railing about a porch, to say nothing of making repairs. The allegation of the petition is "that, by reason of the negligence of defendant in failing to protect said porch by railing or guard, plaintiff suffered the injuries alleged." The defect, if any, was in the original construction; and surely, one merely looking after and in charge of a building is not thereby authorized to make additions thereto, or to remodel the structure, and thereby remedy the design manifestly adopted by the owner. The injuries complained of were consequent on the defect in the original construction, something to which the agency, even had it existed, did not extend. To render such service effective, the action must have grown out of or be connected with the business of the agency. As the agency, if existing in the respects re-

3. PROCESS: actions "growing out of" agency.

cited in Ireland's affidavit, did not extend to remedying the original construction, erecting the railing was no part of the agent's duty, and the action cannot be said to have grown out of or to have been connected with the business of the agency.

III. The third ground of defendant's objection to jurisdiction was that, because of his residence in the state, "the attachment in this action was issued without authority of law." The contention of appellee is that thereby defendant raised a question other than that of jurisdiction, and thereby waived the objection thereto. His motion recited that he appeared specially for the sole purpose of attacking the jurisdiction of the court, and no other relief was prayed. Of course, the validity of the attachment could have had no bearing on the issue as to jurisdiction, and, as no other relief was sought, we do not think it should be regarded as a waiver. The recital of frivolous or extraneous grounds for relief ought not to be construed as an abandonment of those which are pertinent and sufficient, if proven. This is in accord with the recent opinion in *Read v. Rousch,* 189 Iowa 695. The appellant's brief was in substantial compliance with the rules, and the judgment is reversed, owing to want of jurisdiction.— *Reversed.*

4. APPEAR-
ANCE: spe-
cial (?) or
general (?)
appearance.

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.