IOWA ELECTRIC COMPANY, Appellee, v. STATE BOARD OF CONTROL et al., Appellants.

No. 42959.

APRIL 7, 1936.

REHEARING DENIED OCTOBER 2, 1936.

Edward L. O'Connor, Attorney General, and Lehan T. Ryan, Assistant Attorney General, for appellants.

C. E. Richman, and Maher & Mullen, for appellee.

DONEGAN, C. J.—In this action plaintiff filed its petition in the district court of Jones county, Iowa, alleging, in substance, that it is a corporation organized under the laws of the state of Iowa; that the defendants O. H. Michael, E. H. Felton, and Harry C. White are duly appointed, qualified, and acting mem-

bers of the state board of control, and constitute all of the members of such board; that the defendant W. H. Frazer is the duly appointed, qualified, and acting warden of the Men's Reformatory of the state of Iowa; that the plaintiff is the owner of certain land described in said petition and is entitled to the immediate possession thereof; that the defendants, and each of them, claim some right, title, and interest in and to said land, have entered into the possession thereof, and refuse to deliver and are wrongfully withholding such possession from plaintiff. Attached to the petition was an abstract showing plaintiff's title. The prayer asked for judgment against the defendants, for the possession of the premises described, for costs of the action, that the right, title, and interest of the plaintiff be established and quieted as against the adverse claims of the defendants, and that a writ of possession issue directing the sheriff to put the plaintiff in possession of said land.

To this petition the defendants appeared specially, and stated that the action showed on its face that it is a suit against the state of Iowa in its sovereign capacity and cannot be maintained, and that the court has no jurisdiction over the defendants. A hearing was had on such special appearance, at which the defendants introduced evidence as to negotiations between plaintiff and defendants, as shown by letters and telegrams, and extending over the period from January 30, 1928, to June 27, 1931. Following this hearing the trial court entered an order overruling the defendants' special appearance and giving the defendants fifteen days to further plead. From this order, the defendants appeal.

The only question, therefore, presented by this appeal is the correctness of the trial court's ruling on the special appearance. The appellants' special appearance called the trial court's attention to their claim that the petition on its face showed that this action is against the state of Iowa in its sovereign capacity. The evidence introduced, all of which was by the appellants, showed that on January 30, 1928, the Iowa Electric Company wrote to the state board of control stating its intention to build a dam on land owned by it, that this dam would probably cause land owned by the state in connection with the Men's Reformatory at Anamosa to be overflowed, and the electric company offered to exchange some of its land for land owned by the state, on condition that it be given an easement to overflow a certain

portion of the land proposed to be conveyed to the state. This letter also contained a proposal of the electric company to rent certain land to the state. These negotiations continued through the year 1928, and the evidence indicates that the parties finally arrived at a basis upon which the proposed exchange of lands would be carried out. On March 6, 1929, the Iowa Electric Company wrote a letter to the state board of control and sent to it a copy of a plat showing the lands involved, a form of deed, and an overflow grant, and stated that abstracts of title were being prepared and as soon as ready these would be submitted. This letter asked that the board of control look over the conveyances and give the electric company its approval or comments on same as soon as possible. While there was some further correspondence between the electric company and the board of control during the year 1930, this correspondence seems to have reference merely to the rental of 25 acres of land by the warden of the state reformatory from the electric company, and the evidence does not show that these 25 acres are a part of the land involved in this action. The last of the correspondence, shown by the evidence, is contained in a letter sent by the electric company to the state board of control under date of June 27, 1931. This letter refers to a letter of the board of control under date of June 22d, which letter is not in evidence. In this letter of the electric company, which was signed by Oliver Longueville, he states that about two years previously he had forwarded to the board of control all of the papers, blueprints, and contracts pertaining to the matter and had received word from the board of control that these matters had been referred to the department of justice for approval. He further states that the electric company would like to get the matter straightened up, that he believed that the state employees at Anamosa started work on this land in the spring of 1928, that he was informed that the electric company had continued to pay taxes on the land, although the state was using it, and concluded by saying that the electric company would like to get the matter disposed of so as to save the item of taxes.

All of this evidence was objected to on the ground that it did not raise any issue as to the court's jurisdiction over the persons of the defendants; that the court's jurisdiction of the subject-matter of the suit must be determined wholly from the issues presented on the face of the plaintiff's petition, and not

through the introduction of any evidence touching upon the merits of the case; that the evidence offered, consisting of the correspondence between the parties, is not material to any of the issues presented by the defendants' special appearance, and is material only on the merits of the case.

It is contended by the appellants that the defendants here, who are members of the state board of control and the warden of the Men's Reformatory, respectively, are an arm or agency of the state; that the acts which the petition alleges were done by appellants were done as such officers or agency of the state; and that the title to and possession of the premises involved in this action are the title and possession of the state.

The doctrine that a state cannot be sued in its sovereign capacity is so well settled that it requires neither discussion nor citation of authorities. The difficulty is in determining whether the things of which complaint is made in the petition were done by the appellants in their capacity as officers of and as an agency of the state, and under the authority possessed by them as such officers and agency. Numerous cases may be cited in which actions done by state officers and agencies have been held to be the acts of the state, and that a suit against such officers and agencies could not be maintained because it was an action against the state. It does not follow, however, that every action in which state officers or the members of a state agency are named as defendants, and designated by their official title, is an action against the state. There appears to have been some confusion in the earlier cases decided by the United States Supreme Court, in regard to the effect of designating or failing to designate the parties who were made defendants as officers or agents of the government. In the case of Osborn v. Bank of United States, 9 Wheat. (22 U. S.) 738, 6 L. Ed. 204, some of the language used by Chief Justice Marshall might be taken as indicating that the question of jurisdiction would depend upon the designation of the parties in the record. In Pennoyer et al. v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 702, 35 L. Ed. 363, however, that court, in referring to the doctrine here under consideration and to the statements of Chief Justice Marshall in the Osborn case, said:

"The principle stated by Chief Justice Marshall, in that case, that, 'in all cases where jurisdiction depends on the party,

it is the party named in the record,' and that 'the eleventh amendment is limited to those suits in which the state is a party to the record,' has been qualified to a certain degree in some of the subsequent decisions of this court; and now it is the settled doctrine of this court that the question whether a suit is within the prohibition of the eleventh amendment is not always determined by reference to the nominal parties on the record, as the court will look behind and through the nominal parties on the record to ascertain who are the real parties to the suit.''

█ █ █ It is now well settled that the fact that officers or agents of a state are named as defendants does not necessarily clothe them with the immunity of the state. The case of United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 257, 27 L. Ed. 171, is perhaps the leading case on this question. In that case suit was instituted against one Kaufman and one Strong, who, acting under what was supposed to be a valid authority, held possession of certain real estate in Virginia known as Arlington, on which was located a national cemetery and military station. Lee brought an action in ejectment in the circuit court of Virginia. As soon as the declaration was filed in that court, the case was removed to the Circuit Court of the United States. The Attorney General of the United States, without submitting the rights of the government to the jurisdiction of the court, suggested in writing that the property in dispute was held, occupied, and possessed by the United States as a military station, through its officers and agents, who held such possession for the government without any personal interest in it, that the court had no jurisdiction of the subject of the controversy, and moved that further proceedings be stayed. Such motion was denied. The same question was raised by the answers of Kaufman and Strong, and the case proceeded to trial and judgment was entered against them. The case was taken to the Supreme Court of the United States on writ of error and, in a very exhaustive opinion written by Mr. Justice Miller, it was held that the Circuit Court had jurisdiction to decide the issues between the parties that were before it. After reviewing its prior cases involving the same or similar questions, the court said:

''This examination of the cases in this court establishes clearly this result: that the proposition that when an individual is sued in regard to property which he holds as officer or agent

of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, and that in many others where the record shows that the case as tried below actually and clearly presented that defense, it was neither urged by counsel nor considered by the court here, though, if it had been a good defense, it would have avoided the necessity of a long inquiry into plaintiff's title and of other perplexing questions, and have quickly disposed of the case. And we see no escape from the conclusion that during all this period the court has held the principle to be unsound, and in the class of cases like the present, represented by Wilcox v. Jackson [13 Pet. 498, 10 L. Ed. 264], Brown v. Huger [21 How. 305, 16 L. Ed. 125], and Grisar v. McDowell [6 Wall. 363, 18 L. Ed. 863], it was not thought necessary to reexamine a proposition so often and so clearly overruled in previous well-considered decisions.

''It is true that there are expressions in the opinion of the court in the case of Carr v. U. S., 98 U. S. 433 [25 L. Ed. 209], which are relied on by counsel with much confidence as asserting a different doctrine. * * *

''Looking at the question upon principle, and apart from the authority of adjudged cases, we think it still clearer that this branch of the defense cannot be maintained. It seems to be opposed to all the principles upon which the rights of the citizen, when brought in collision with the acts of the Government, must be determined. In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the government, professing to act in its name. There remains to him but the alternative of resistance, which may amount to crime. The position assumed here is that, however clear his rights, no remedy can be afforded to him when it is seen that his opponent is an officer of the United States, claiming to act under its authority; for, as Chief Justice Marshall says, to examine whether this authority is rightfully assumed is the exercise of jurisdiction, and must lead to the decision of the merits of the question. The objection of the plaintiffs in error necessarily forbids any inquiry into the truth of the assumption that the parties setting up such authority are lawfully possessed of it, for the argument

is that the formal suggestion of the existence of such authority forbids any inquiry into the truth of the suggestion."

As supporting the doctrine set out in United States v. Lee, supra, see Pennoyer et al. v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 35 L. Ed. 363; Tindal v. Wesley, 167 U. S. 204, 17 S. Ct. 770, 42 L. Ed. 137; Stanley v. Schwalby, 147 U. S. 508, 13 S. Ct. 418, 37 L. Ed. 259; Poindexter v. Greenhow, 114 U. S. 270, 5 S. Ct. 903, 962, 29 L. Ed. 185; Whatley et al. v. Patten, 10 Tex. Civ. App. 77, 31 S. W. 60, 62; Richardson v. Liberty Oil Co., 143 La. 130, 78 So. 326; Weyler, Warden v. Gibson et al., 110 Md. 636, 73 A. 261, 263, 17 Ann. Cas. 731; Pauchogue Land Corp. v. Long Island S. P. Commission, 243 N. Y. 15, 152 N. E. 451; Locke v. Trustees of New Mexico Reform School, 23 N. M. 487, 169 P. 304; Thompson v. Auditor General, 261 Mich. 624, 247 N. W. 360; annotation and cases cited under ejectment and ouster in 44 L. R. A. (N. S.) 210.

The case of Weyler, Warden, v. Gibson, supra, was in some respects similar to the case at bar. Gibson and others brought suit in ejectment against Weyler, who, as warden of the state penitentiary, was in possession of land on which a part of a building of the penitentiary was located. It was claimed that the action was against the state and could not be maintained. The trial court held that the action was not against the state but against Weyler. In affirming this holding, the Court of Appeals said:

"It is conceded that no suit can be brought against the state without its consent. This immunity of the state from suit rests upon grounds of public policy, and is too firmly fixed in our law to be questioned. But it would be strange indeed, in the face of the solemn constitutional guaranties, which place private property among the fundamental and indestructible rights of the citizen, if this principle could be extended and applied so as to preclude him from prosecuting an action of ejectment against a state official unjustly and wrongfully withholding property, by the mere fact that he was holding it for the state and for state uses. It is easy to see the abuses to which a doctrine like that would lead."

In Whatley et al. v. Patten, supra, likewise, Whatley, as superintendent of the state penitentiary, was in possession of

land claimed by Patten, and raised the question of the jurisdiction of the court, on the ground that his possession was the possession of the state and that the suit could not be maintained. In holding that the action was not against the state, the Court of Civil Appeals of Texas said:

"Whatley was in possession of the land, and, although he was an officer of the state of Texas, and had such possession only in his official capacity, the suit against him was not a suit against the state, and the plaintiff was entitled to maintain his action."

Appellants cite and appear to rely very largely on cases decided by this court, such as: Hollingshead Co. v. Board of Control, 196 Iowa 841, 195 N. W. 577; Mills Publishing Company v. Larrabee, 78 Iowa 97, 42 N. W. 593; Hern v. Iowa State Agricultural Society, 91 Iowa 97, 58 N. W. 1092, 24 L. R. A. 655; Wilson v. Louisiana Purchase Exposition Commission, 133 Iowa 586, 110 N. W. 1045, 119 Am. St. Rep. 646; Metz v. Soule, Kretsinger & Co., 40 Iowa 236; DeVotie v. Iowa State Fair Board, 216 Iowa 281, 249 N. W. 429; Long v. Highway Commission, 204 Iowa 376, 213 N. W. 532. In each of these cases, however, it appeared that the officer or agency sued was acting within the scope of authority validly bestowed and in behalf of the state, and that the state was the real party to the action. This court has also held that a state officer or agency, even when designated as such, is not immune from suit, where such officer or agency claims to be merely acting for and in behalf of the state, when the acts done were without valid authority or in violation of statutory or constitutional provisions. Scottish U. & N. Ins. Co. v. Herriott, Treas. of State, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548; McKeown v. Brown, Treas., 167 Iowa 489, 149 N. W. 593; Hoover v. Iowa State Highway Commission, 207 Iowa 56, 222 N. W. 438.

In the Hoover case the state highway commission attempted to establish a primary road over real estate owned by the plaintiff. Plaintiff asked that they be enjoined on the ground that they were attempting to take his property in violation of a statute forbidding the establishment of such road through any orchard or ornamental grounds contiguous to any dwelling house without the consent of the owner. Defendants entered a special appearance denying the jurisdiction of the court on the ground that the highway commissioners and engineer were an

arm of the state and could not be enjoined from performing official duties. The trial court sustained the special appearance, but, on appeal to this court, the case was reversed. The opinion was written by Mr. Justice Kindig who, after quoting from United States v. Lee, supra, and citing a long list of cases sustaining his holding, said (207 Iowa 56, loc. cit. 61, 222 N. W. 438, 440):

"Appellant does not attempt to obtain money from the state, interfere with its sovereignty, or the administration of its affairs through proper agencies. On the other hand, he only wants to protect his property from destruction by the agents of the state, who exceed their authority and thereby seek to take it from him, not with, but without, legal right and in opposition to a legislative guarantee. Clearly the power of the courts to restrain state officials from violating plain provisions of the statute and Constitution is in no way derogatory to the general and well-recognized rule that the state cannot be sued without its consent.

"Suit here, as above explained, is not against the state or an arm thereof acting for the sovereign. There is in this instance an illustration of the clear distinction between an attempt to control the action or discretion of the state or its officers, board, or commission in regard to matters intrusted to them on the one hand, and, on the other, appellant's humble effort to prevent appellees from violating his constitutional, statutory, and property rights. A strange doctrine, indeed, would give rise to the court's insufficiency to help him at this juncture. Law and order demand that state officials cannot take over and possess appellant's property for road purposes in the face of the statutory prevention contained in section 4566, supra. Logically, then, when threatening to do so, they cannot successfully defend in an equitable proceeding to restrain such illegal act on the basis that the courts are without jurisdiction to interfere, because, perchance, within certain appropriate limits, those who are acting wrongfully are an arm of the state. Without this judicial redress, appellant would be helpless, and the apparent security of the Constitution and statutes becomes, so far as he and his property rights are concerned, a mere pretense without practical meaning or effect."

■■■ In the instant case we have before us only the petition

of the plaintiff, the special appearance of the defendants, and the evidence introduced in support of such special appearance. Even if we assume that the evidence introduced is material and competent, and that the defendants who constitute the state board of control had the power to make binding contracts in regard to acquiring title to real estate (and no authority is cited showing that they possess such power), we are unable to see how it could be determined from what is before the court at this time that a binding contract was entered into, under which the state of Iowa acquired any right to the land involved in this action, without allowing the appellee to present evidence in support of the facts alleged in its petition. Such a procedure would involve a determination of the merits of the case, and this is not the purpose of a special appearance. Section 11088, Code 1931; Scott v. Wamsley, 215 Iowa 1409, 245 N. W. 214; Read v. Rousch, 189 Iowa 695, 179 N. W. 84; Irwin v. Keokuk Savings Bank & Trust Co., 218 Iowa 470, 254 N. W. 806; Dolan v. Keppel, 189 Iowa 1120, 179 N. W. 515.

Under the record as here presented, we are unable to see how the defendants can be said to be in rightful possession of the land for the state of Iowa, and, for this reason, immune from answering to the allegations contained in the plaintiff's petition. As the record stands, we, therefore, hold that the special appearance was rightfully overruled and that the defendants were properly required to plead to the plaintiff's petition. If, upon further proceedings in this action, it shall appear that the state of Iowa does have an interest in the land here involved, and that the acts of the appellants were done by them as the agents and officers of the state, pursuant to valid authority, and in the performance of their duties, their claim of immunity as officers or an agency of the state will, no doubt, then receive the consideration to which it is entitled at the hands of the court.

The order of the trial court overruling the defendants' special appearance is, therefore, affirmed.—Affirmed.

All Justices concur.