C. M. KIRTLEY, trustee for Automatic Washer Company, debtor in reorganization, appellant, v. JOHN W. CHAMBERLIN, appellee.

No. 49559.

(Reported in 93 N.W.2d 80)

138

NOVEMBER 18, 1958.

W. Z. Proctor, Howard A. Steele, Harris M. Coggeshall, and James L. Rogers, all of Des Moines, for appellant.

Bridges & Peshkin, of Des Moines, for appellee.

LINNAN, J.— This is an action at law brought in the Polk County District Court by the trustee of the Automatic Washer Company, a Delaware corporation, with its principal place of business in Newton, Iowa, debtor in reorganization, against John W. Chamberlin, a nonresident of the State of Iowa, and former President, Director and Chief Executive Officer

of the debtor-corporation, claiming damages in excess of nine million dollars for alleged fraud and mismanagement in his dealings with the company. Defendant filed a special appearance and motion to quash the service of notice on him upon the ground that service of notice was made upon him while he was attending a hearing in the court of the Referee in Bankruptcy on a claim filed by him in said court for services and unreimbursed expenses owing to him by the debtor in reorganization and a counterclaim filed thereto by the trustee, and at a time when he was immune from service. The trial court held that defendant as a nonresident of the state was immune from service of process in a plenary action in the state court, while attending the hearing in question and sustained the special appearance and quashed the service of notice. The trustee has appealed from that ruling and decision.

While this appeal presents but a single narrow issue, to wit, was the defendant, a nonresident, immune from service of process while in the state attending the hearing in the Bankruptcy Court, yet the questions involved are troublesome, involved, and not entirely free from doubt. So far as we have been able to discover, the precise matter has never been passed upon by this court. The appellant does not challenge the broad general rule of immunity granted to nonresident litigants and witnesses while in the state attending court hearings, but contends that under a well-recognized exception to the general rule such immunity does not extend to a person who voluntarily comes into the state to attend the trial of litigation commenced by him from service of process in a plenary action dealing with the same subject matter between the same parties, where a full and complete determination of the rights of the parties cannot be had in the first action. The case has been ably briefed on both sides and numerous authorities have been cited which it is contended support their respective positions. It is utterly impossible to reconcile all of these cases so we will have to be guided by those which we think present the most sound and reasonable view.

The facts, all of which were stipulated, must be set out at some length to present the precise issue between the parties:

Automatic Washer Company is a Delaware corporation with its principal place of business in Newton, Iowa, where it

was formerly engaged in the manufacture and sale of washing machines and to some extent to the performance of government contracts. The defendant, John W. Chamberlin, has been President and Chief Executive Officer since March 22, 1955, and a member of the Board of Directors since December 23, 1955. He is a nonresident of the State of Iowa. On October 29, 1956, a petition for reorganization under chapter X of the Bankruptcy Act, 11 U. S. C. A., section 501 et seq., was filed in the United States Court for the Southern District of Iowa, which petition was verified by the defendant, Chamberlin, as president of the company. The petition was allowed and pursuant thereto the plaintiff-appellant was appointed trustee for the debtor in reorganization. Notice was duly given pursuant to order of court of the time for filing claims and on March 15, 1957, defendant, Chamberlin, filed a claim of $25,000 for alleged unreimbursed expenses incurred by him on behalf of the debtor-corporation. The trustee denied liability on said claim and filed a counterclaim for $82,970.95, based on misappropriation of corporation funds in the guise of expense allowances.

The claim and counterclaim, together with many other claims, were set down for hearing by the Referee in Bankruptcy for December 10, 1957. Because of automobile difficulty, defendant, Chamberlin, did not arrive in Des Moines until the afternoon of that day. Meanwhile the hearing on claims had been recessed until 3 p.m. of that day. Shortly before 3 p.m., Chamberlin appeared in the referee's courtroom and at about the same time was served with the original notice of this action by a deputy sheriff of Polk County, Iowa. The notice was served in the referee's courtroom and before the referee had returned and court was not at session. At that time Chamberlin was without counsel and the Referee in Bankruptcy adjourned the hearing on his claim until December 11, 1957. The hearing commenced on that day and was again continued until December 12, 1957, in order for the defendant to obtain counsel. On December 12, 1957, defendant appeared by counsel and counsel gave verbal notice of a proposed amendment to the claim, and on December 13, 1957, an amendment and substituted claim in the amount of $120,500 for alleged services and expenses were filed. Up to the time of the trial of this case no ruling had been

made by the referee on the claim or counterclaim. Defendant, Chamberlin, left Des Moines on December 13, 1957, at the conclusion of the hearing.

The petition in this case is in seven counts, claiming damages in excess of nine million dollars, based upon alleged fraud and mismanagement by the defendant while President and Chief Executive Officer of the debtor in reorganization.

I.  The general rule of immunity from service of civil process of witnesses and parties is well established in Iowa. It was first announced in the case of Murray v. Wilcox, 122 Iowa 188, 97 N.W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263, and has been consistently followed up to the present time. See Stutsman v. Hilltop Farm Feed Co., 242 Iowa 268, 45 N.W.2d 892, Frink v. Clark, 226 Iowa 1012, 285 N.W. 681, Kelly v. Shafer, 213 Iowa 792, 239 N.W. 547, Moseley v. Ricks, 223 Iowa 1038, 274 N.W. 23. This is in line with the almost universal rule prevailing in other states and in the Federal courts.

While there is difference in opinion as to the reason for the rule, whether it is for the protection of the courts or is a personal privilege of the party involved, the former seems the soundest and most logical reason for granting the immunity. It is so stated by Justice Brandeis in the case of Long v. Ansell, 293 U. S. 76, 83, 55 S. Ct. 21, 22, 79 L. Ed. 208, 210, thus:

"That rule of practice is founded upon the needs of the court, not upon the convenience or preference of the individuals concerned. And the immunity conferred by the court is extended or withheld as judicial necessities require."

This court in the case of Moseley v. Ricks, 223 Iowa 1038, 1041, 274 N.W. 23, 24, expressed the same views, for in the opinion in that case we quote with approval from a note in 85 A. L. R. 1335, 1341, the following language:

"The immunity from service of civil process of witnesses while attending a trial in a state other than that of their residence to give evidence, and, by the great weight of authority, of suitors, both plaintiffs and defendants, is so well recognized that it will not be extensively discussed herein. As said by the court in Murrey v. Murrey (reported herewith) [216 Cal. 707,

16 P.(2d) 741, 85 A. L. R. 1335], the exemption from service of civil process, extended at common law to parties to judicial proceedings and their witnesses, and members of the court whose duties required their attendance upon the court and whose presence was necessary to the court in the performance of its functions, was originally deemed a privilege of the court, and not one of the individual. In 21 R. C. L. page 1307, it is said: 'This privilege which is accorded to parties or witnesses is not a natural right; on the contrary it is in derogation of common right. The rule is of ancient origin, and is mentioned in the Year Book as early as Henry VI. It came to us out of the common law, with only such modifications as were required to make its principle harmonize with American institutions, and to be in accord with American jurisprudence. The reason for granting this immunity is varied, some placing it as a personal privilege to the suitor or witness, and others as good public policy that a court should not be hampered by having those in attendance on it pounced on by other litigants. The rule was primarily established for the protection of the courts, that they might the better administer justice, free from interference with and intimidation of suitors, solicitors, and witnesses, and disturbance of the court's officers in the exercise of their duties. It becomes a privilege affecting persons in their several capacities only as their protection from process renders the administration of justice more certain and complete. In other words, the privilege of the individual is incidental; the protection of courts of justice is the primary object of the rule. No one is hurt by this exemption, since, if it did not exist, the nonresidents would not go into the foreign state, and service of summons on them could not be made anyway.' "

II. It is equally well established that there are certain exceptions to the general rule and situations in which immunity will not be granted. In the case where we have first announced the rule, Murray v. Wilcox, supra, we recognize this fact, for we there said at pages 191, 192 of 122 Iowa, page 1088 of 97 N.W.:

"Of course, there may be exceptions, as Mullen v. Sanborn, supra [79 Md. 364, 29 A. 522, 25 L. R. A. 721, 47 Am. St. Rep.

421], where a plaintiff in an attachment suit came from another state to testify, and was held not to be privileged from the service of summons while there in an action for maliciously bringing the attachment suit. Having resorted to this drastic remedy, the equal administration of justice seemed to demand recoupment of the resulting damages in the same jurisdiction."

So the precise question before us is whether or not, under the facts and circumstances in this case, the general rule is to be applied, or whether a situation is disclosed which brings the case within one of the exceptions to the general rule.

■■ III. The Bankruptcy Court is a court of law within the scope of securing immunity of process to parties and witnesses therein. Powell v. Pangborn, 161 App. Div. 453, 145 N. Y. S. 1073; 72 C. J. S., Process, section 81, page 1121.

IV. One of the generally recognized exceptions to the general rule is well stated in the case of Velkov v. Superior Court, 40 Cal.2d 289, 292, 253 P.2d 25, 26, 35 A. L. R.2d 1348, 1351, in the following language:

■■ "A recognized exception to the rule of immunity is that it does not apply if the later action, in regard to which immunity from service is claimed, arises out of or involves the same subject matter as the one in which the nonresident has made a voluntary appearance. Slosberg v. Municipal Court, 101 Cal. App.2d 238, 240, 225 P.2d 312; Von Kesler v. Superior Court, 109 Cal.App. 89, 91, 292 P. 544; annotation 19 A. L. R. 828. The reason for this limitation is that to permit a resident of a foreign state, by means of an immunity from service of process, to pick and choose among portions of the subject matter of litigation may result in a hardship to the opposing party. Livengood v. Ball, 63 Okla. 93, 94, 162 P. 768, 770, L. R. A. 1917C, 905."

Perhaps the leading case on the subject is the case of Lamb v. Schmitt, 285 U. S. 222, 225–228, 52 S. Ct. 317, 318, 319, 76 L.Ed. 720. There the principal action was brought to set aside conveyances of land and dispositions of money in fraud of general creditors. The plaintiffs being successful, a receiver was appointed and the receiver then brought suit against one Lamb,

an attorney for one of the defendants in the main case, to recover funds paid to him as attorney fees while the main action was pending. Lamb, a resident of Illinois, was served with process while he was in attendance at Federal court in Mississippi in connection with the principal action as such attorney. He claimed that as a resident of Illinois he was immune from service at the time. The Supreme Court of the United States in overruling this contention held that no immunity existed because of the connection between the two cases. In the opinion the court said:

"The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, is founded, not upon the convenience of the individual, but of the court itself. * * *

"It follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require. * * * Limitations of it on this basis have been not infrequently made * * *.

"The question presented here is of a somewhat different character: Whether, despite any effect of the immunity in encouraging voluntary attendance at the trial, it should be withheld from one who, while in attendance, is served with process commanding his continued presence and aid to facilitate the pending litigation, and to carry it to its final conclusion? * * *

"These considerations have in special circumstances led to a denial of the immunity, even though the service was made in an independent suit in no sense ancillary to the pending litigation. See Livengood v. Ball, 63 Okla. 93, 162 P. 768, L. R. A. 1917C, 905; Rizo v. Burruel, 23 Ariz. 137, 202 P. 234, 19 A. L. R. 823. But it is not necessary to go so far in the present case. Here the two suits, pending in the same court, are not independent of each other or unrelated. The second was brought in aid of the first, on which the petitioner, when served with process, was in attendance, charged with the duty of counsel in the case to assist the court. It was brought to secure rights

asserted in the first suit which, but for the acts charged against the petitioner in the second, would have beeen secured in the first. * * *

"From the viewpoint of the due administration of justice in the first suit, the second was as much a part of it as if it had been an interlocutory motion to compel the production in court of documents or of property involved in the suit. The case is, therefore, not one where the cause pending before the court is subjected to possible hindrance or delay by service of process in some unrelated suit. The aid of the petitioner already in attendance upon the litigation, was demanded in order that the relief prayed might be secured and the cause brought to a final and successful termination. Neither that demand nor compliance with it could prevent his attendance upon the principal cause, as service of process in another court might. * * * Judicial necessities require that such immunity should be withheld, and it was rightly denied by the court below.

"* * * The test [of the privilege] is whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it. That, as we have said, depends here upon the nature of the proceeding in which the service is made and its relation to the principal suit, both of which are disclosed by the pleadings."

A fairly recent (1951) Nebraska case, Miller v. Miller, 153 Neb. 890, 904, 46 N.W.2d 618, 626, being a situation where a husband returned to the jurisdiction to litigate his application for modification of a divorce decree, held the husband not immune from service on application of the wife to cite him for contempt for failure to pay alimony. The court in that case adopts the same position, saying:

"The rule that suitors from a foreign jurisdiction are exempt from service of civil process while attending court and for such reasonable time before and after as may enable them to come from and return to their homes does not extend to process in an action or proceeding involving or connected with the subject matter of the litigation during attendance upon which the nonresident suitor is served. Sanders v. Smith, 197 Miss. 304,

20 So.2d 663; Arnett v. Smith, Inc., 165 Miss. 53, 145 So.. 638; Brooks v. State ex rel. Richards, 26. Del. 1, 79 A. 790, 51 L. R. A., N. S., 1126, Ann. Cas. 1915A 1133; Lamb v. Schmitt, supra; Long v. Ansell, 293 U. S. 76, 55 S. Ct. 21, 79 L. Ed. 208; Page Co. v. MacDonald, 261 U. S. 446, 43 S. Ct. 416, 67 L. Ed. 737; Rizo v. Burruel, 23 Ariz. 137, 202 P. 234, 19 A. L. R. 823; Sofge v. Lowe, 131 Tenn.. 626, 176 S.W. 106, L. R. A. 1916A 734; Stewart v. Ramsay, 242 U. S. 128, 37 S. Ct. 44, 61 L. Ed. 192; Tiedemann v. Tiedemann, 35 Nev. 259, 129 P. 313; Von-Kesler v. Superior Court, 109. Cal. App. 89, 292 P. 544; 42 Am. Jur., Process, §150, p. 130; Annotation, 19 A. L. R. 828."

V. It is the contention of appellant that the present case comes within the above exception because it arises out of, is related to or involves the same subject matter as the first, or is in aid of it, or is necessary to enable a determination of the complete controversy between the same parties. Appellee's main contention is that the matters claimed in the present action should have been made a part of the counterclaim which plaintiff filed to defendant's claim in the Bankruptcy Court. To answer that question it becomes necessary to examine and attempt to analyze the factual situation at bar.

VI. When the petition for reorganization of Automatic Washer Company was allowed, it brought into operation all of the machinery of the Bankruptcy Court in reorganization proceedings, including the provisions for the filing and allowing of claims for creditors, the rights and powers of the trustee to institute and prosecute on behalf of the debtor in reorganization, plenary actions to recover property, assets, or claims for moneys due, and all other actions authorized or provided by law to effectuate the general over-all purpose of the reorganization proceedings. It would appear, therefore, that the filing of the claim by the defendant in the bankruptcy proceedings and the bringing of this action by the trustee are but parts or segments of one subject matter, namely, the orderly administration of the affairs of the debtor-corporation, Automatic Washer Company, under the laws of the United States providing for corporate reorganizations. The primary purpose of chapter X of the Bankruptcy Act is to prevent unnecessary or premature liquida-

tions and whenever possible to rehabilitate the debtor under the rules and regulations of the Bankruptcy Act. In some cases the debtor-corporation is left in possession. In other cases, a trustee is appointed to take charge of and manage the affairs of the debtor-corporation until it can be determined whether or not a reorganization can be effected. If reorganization fails, then the corporation is liquidated as in ordinary bankruptcy cases. In order to accomplish the intended purpose of the act, the financial status of the corporation must be determined, which entails the determination of the rights of creditors and the ascertainment of the assets of the debtor-corporation, so that the true financial picture may be presented to the creditors when the plan for reorganization provided for by the act is presented to them for their approval or disapproval. The procedure provides for the filing and allowance of claims of creditors on one hand and on the other hand vests in the trustee the power and authority to enforce payment of obligations due to the debtor-corporation. It would appear, therefore, that the filing of the claim by the defendant in the bankruptcy action and the bringing of this action by the trustee against the defendant for moneys alleged to be due by him to the debtor-corporation are so related as to bring this action within the exception to the general rule. Defendant came into Iowa for the purpose of attempting to establish his right as a creditor to participate in the assets of the debtor-corporation. The plaintiff-trustee charged with the duty of collecting the assets of the debtor-corporation under the order and direction of the Bankruptcy Court promptly sued him for a large amount which, if recovered, would be an asset of the debtor-corporation. We cannot see how defendant can properly claim immunity in such a situation. The language of the United States Supreme Court in the case of Lamb v. Schmitt, which we have quoted above, can be very aptly applied to the situation now before us.

VII. Appellee's main answer to this proposition is that the plaintiff should have joined this action as a part of his counterclaim to the defendant's claim in the Bankruptcy Court. In his brief, he states: "The principal area of disagreement, then, in this appeal is whether or not the appellant herein could have brought this action as an additional counterclaim in the

Bankruptcy Court rather than as an entirely new action in the State District Court, for upon this question hangs the answer to the immunity of the defendant to the original notice served by the plaintiff in the action at bar." We are unable to follow this reasoning as we are unable to see how the question of whether plaintiff could or should have filed these claims as additional counterclaims could be determinative of the question of defendant's immunity from process in this action.

There is grave question as to whether or not the matters pleaded in plaintiff's petition could have been filed as a counterclaim to defendant's claim in the Bankruptcy Court, but most certainly they could not have been so filed without his consent and plaintiff had no reason to anticipate that such consent would have been given.

Section 68 of the Bankruptcy Act (11 U. S. C. A., section 108) provides for the filing of two types of counterclaims, one compulsory and the other permissive. Subsection a of section 68, which reads as follows: "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid" provides for the filing of compulsory counterclaims. These are claims arising out of the same subject matter. Defendant's claim in this case was for services and expenses. Plaintiff did file a counterclaim covering so much of his claim as related to the same subject matter based on excessive expense payments and personal expenses improperly charged to the debtor-corporation. This is as far as he could go without debtor's consent. The filing of the claim in the Bankruptcy Court by defendant was an implied consent to the filing of a counterclaim relating to the same subject matter, even though it exceeded in amount the original claim, which would give the Bankruptcy Court jurisdiction to enter judgment against him for the excess, but the claims must be mutual and arise out of the same subject matter.

The rule is stated in 5 Remington on Bankruptcy, section 2202, page 359, as follows: "A somewhat similar problem comes up where the trustee interposes a counterclaim. Is the creditor's filing of the claim against which the offset or counterclaim is pleaded consent to exercise of summary jurisdiction for deter-

*mination of the latter? The decisions here are not entirely clear, but it seems that the filing of a claim in bankruptcy amounts at least to consent to summary determination of any mutual counterclaim arising out of the same occurrence or transaction to the extent of the claim filed. As long as the counterclaim falls within the mutuality orbit, as arising out of the same transaction or occurrence, it has been held that the consent goes even farther and will sustain an adverse personal judgment against the claimant.* Such mutuality being present, submission to the court's jurisdiction by filing the original claim permits the court to adjudicate a counterclaim charging voidable preferences, and seeking their recovery, in excess of the amount of the claim. The theory supporting decisions of this nature is that the bankruptcy court is a court of equity with inherent jurisdiction to dispose of all issues incident to a controversy properly before it, and the filing of the claim, in the face of the rules and provisions for counterclaims, is equivalent to consent to exercise of such jurisdiction. Application of this principle eliminates right to trial by jury as well as other objections." (Emphasis added.)

The decisions of the Federal courts are not in harmony on this question, but one fairly recent case, In re Majestic Radio and Television Corp. (1955) 7 Cir., 227 F.2d 152, 156, holds squarely that the filing of a claim does not authorize the filing of a counterclaim based on an unrelated, unliquidated claim for damages such as claimed by plaintiff in this action. There the creditor filed a claim for goods, wares and merchandise sold to debtor in the amount of $1481.99. The trustee filed a counterclaim of $442,067.25 based on alleged breaches of fiduciary duty by the creditor who was a director of the debtor-corporation. This was also a reorganization proceeding. The counterclaim was dismissed for want of jurisdiction and the trustees appealed and the case was affirmed on appeal. In passing on this question, the court in that case said:

"The trustees insist that by filing his proof of claim in the Bankruptcy Court for summary disposition Franklin has, by implication, consented to that court's summary jurisdiction for summary adjudication of any setoff or counterclaim raised against him. Many cases are cited by the trustees in which courts have held that filing a proof of claim in a Bankruptcy

Court constitutes consent to be sued in that court on counter-claims arising out of the same transaction. Columbia Foundry Co. v. Lochner, 4 Cir., 179 F.2d 630, 14 A. L. R.2d 1349; Chase National Bank of City of New York v. Lyford, 2 Cir., 147 F.2d 273; Florance v. Kresge, 4 Cir., 93 F.2d 784. But no case has been cited, nor have we found any, in which it has been held that a Bankruptcy Court has acquired such jurisdiction of a setoff or counterclaim because the counter-defendant had filed a proof of claim arising out of a completely different subject matter. The trustees must concede that the alleged cause of action they seek to have adjudicated in the Bankruptcy Court does not arise from any of the transactions upon which Franklin's claim is based.

"It is obvious that filing a claim in a Bankruptcy Court is an implied consent to summary adjudication by that court of any counterclaims based upon the subject matter of that claim. A litigant could hardly claim a recovery on the basis of a certain fact situation without permitting the court to decide all of the legal consequences of that situation. No party can invite summary adjudication on only part of the relevant evidence relating to the subject matter of the claim. If all of such evidence shows that each party is liable to the other the court will set off one claim against the other and render judgment for only any balance found to be due. In other words, if you invite a Bankruptcy Court to review a set of facts for your benefit, you invite it to review all pertinent related facts even though they should tend to prove your opponent's case. But it does not follow that by filing a claim a litigant has impliedly consented to the summary adjudication in the Bankruptcy Court of a counterclaim arising out of subject matter which has no relation to his claim. Here Franklin did not consent to the adjudication of the trustees' counterclaim; he objected to it, and the trial court upheld his objection.

"Jurisdiction of Bankruptcy Courts is created and limited by statute. In re Prima Co., 7 Cir., 98 F.2d 952, 956, certiorari denied Keig v. Harris Trust & Savings Bank, 305 U. S. 658, 59 S. Ct. 357, 358, 83 L. Ed. 426; Wheeling Structural Steel Co. v. Moss, 4 Cir., 62 F.2d 37, 39. And Section 23 of the Bankruptcy Act specifically limits jurisdiction over this adverse

claimant unless he consents to that jurisdiction. Franklin clearly did not give his express consent, and we hold that the filing of his proof of claim did not constitute his implied consent to be sued on an alleged cause of action arising out of a different subject matter."

Some of the other federal cases contain language indicating they believe the rule to be broader and that the Bankruptcy Court has jurisdiction to entertain any and all types of counterclaims. It would be impossible to review them all without unduly extending this opinion. It is sufficient to say that none of them goes so far as to hold that it is compulsory upon the trustee to file a counterclaim based upon an entirely different and unrelated matter.

■ VIII. Another reason why we think the appellee's position is not sound is that there is nothing in chapter X of the Bankruptcy Act which takes away the trustee's choice of forum. The proceedings in bankruptcy are summary proceedings where no trial by jury is allowed. The trustee most certainly had a right to trial by jury on the matters claimed in his petition if he so desired and elected. The defendant had no right to dictate the forum. This is clearly announced by the Supreme Court of the United States in the case of Williams v. Austrian, 331 U. S. 642, 656, 67 S. Ct. 1443, 1450, 91 L. Ed. 1718, 1728, where Chief Justice Vinson, writing the opinion, said:

"To interpret the elimination of §23 in Chapter X cases as restricting the access of the trustee to the federal courts would not be in harmony with other provisions contemporaneously written into Chapter X and defining anew the position and functions of the reorganization trustee. The appointment of a disinterested trustee was made mandatory in appropriate cases, his qualifications were prescribed, and upon him were devolved functions aimed at eliminating the abuses of previous reorganization schemes. It was his duty to prepare the reorganization plan, and there were conferred upon him investigative powers and duties which not only contemplated the discovery of wrongs done the debtor by its former management, but also insured the 'prosecution of all causes of action' which might 'add to the assets of corporations in reorganization.' These provisions were

'of paramount importance in the revision of §77B,' and are hardly indicative of a Congressional desire to restrict the trustee's choice of a forum in which to litigate plenary suits. On the contrary, the conclusion more in accord with the purposes of Chapter X and with the pivotal position in which the trustee was placed is that Congress intended by the elimination of §23 to establish the jurisdiction of federal courts to hear plenary suits brought by a reorganization trustee, even though diversity or other usual ground for federal jurisdiction is lacking."

IX. Another reason why we cannot agree with appellee is that we feel that the question of whether plaintiff could or should have filed an additional counterclaim in the Bankruptcy Court on the matters now claimed in his present petition is not at all decisive of the question of his immunity from service of process. This matter might very well be pleaded as a defense, but does not support the special appearance. The question of whether or not he was immune from service does not hinge on whether or not the plaintiff had the right to maintain this action in the state court. The plaintiff did bring this action in the state court and, if it was improperly brought, defendant has the right to challenge it in the proper manner, but not by the filing of a special appearance based upon immunity from service. In the case of Iowa Electric Co. v. State Board of Control, 221 Iowa 1050, 1058, 1059, 266 N.W. 543, 547, an action in equity was brought to quiet title to certain land, to which defendants filed a special appearance alleging that the petition showed on its face that it was an action against the State of Iowa in its sovereign capacity and that defendants were immune from service and the court had no jurisdiction over them. The special appearance was overruled and this was affirmed on appeal. We there said:

"In the instant case we have before us only the petition of the plaintiff, the special appearance of the defendants, and the evidence introduced in support of such special appearance. Even if we assume that the evidence introduced is material and competent, and that the defendants who constitute the state board of control had the power to make binding contracts in regard to acquiring title to real estate (and no authority is

cited showing that they possess such power), we are unable to see how it could be determined from what is before the court at this time that a binding contract was entered into, under which the state of Iowa acquired any right to the land involved in this action, without allowing the appellee to present evidence in support of the facts alleged in its petition. Such a procedure would involve a determination of the merits of the case, and this is not the purpose of a special appearance. Section 11088, Code 1931; Scott v. Wamsley, 215 Iowa 1409, 245 N.W. 214; Read v. Rousch, 189 Iowa 695, 179 N.W. 84; Irwin v. Keokuk Savings Bank & Trust Co., 218 Iowa 470, 254 N.W. 806; Dolan v. Keppel, 189 Iowa 1120, 179 N.W. 515.

"Under the record as here presented, we are unable to see how the defendants can be said to be in rightful possession of the land for the state of Iowa, and, for this reason, immune from answering to the allegations contained in the plaintiff's petition. As the record stands, we, therefore, hold that the special appearance was rightfully overruled and that the defendants were properly required to plead to the plaintiff's petition. If, upon further proceedings in this action, it shall appear that the state of Iowa does have an interest in the land here involved, and that the acts of the appellants were done by them as the agents and officers of the state, pursuant to valid authority, and in the performance of their duties, their claim of immunity as officers or an agency of the state will, no doubt, then receive the consideration to which it is entitled at the hands of the court.

"The order of the trial court overruling the defendants' special appearance is, therefore, affirmed.—Affirmed."

So also in Anderson v. Moon, 225 Iowa 70, 74, 279 N.W. 396, 397, defendant was sued for damages growing out of an automobile collision. He filed a special appearance claiming immunity as an employee of the State of Iowa. The special appearance was overruled and affirmed on appeal. We there said:

"If, upon trial, appellee successfully establishes the allegations of her petition, she will be entitled to recover unless it be established that at the time of the collision that appellant was

immune from liability on account of his claim of governmental immunity. It follows therefore that the claim of governmental immunity interposed by appellant, if meritorious, would be proper defensive matter to be interposed and submitted during the trial of the action."

See also Scott v. Wamsley, 215 Iowa 1409, 245 N.W. 214; Bachman v. Iowa State Highway Comm., 236 Iowa 778, 20 N.W.2d 18.

X. It is argued by appellee that the bringing of this plenary action was an impediment to the proceedings in the Bankruptcy Court causing unnecessary and undue delay. We do not agree. The record discloses that prior to the commencement of this action, defendant was examined as an officer of the debtor-corporation pursuant to the investigative powers conferred upon the Bankruptcy Court and that after such examination and further investigation by the trustee an order was entered authorizing the bringing of this action by the plaintiff as trustee of the debtor-corporation. It can, therefore, be properly assumed that something was disclosed as the result of this investigation that justified the bringing of this action, and where plaintiff, as an officer of that court, acting with the authority of that court, brought this action, there is no reason to claim that he was impeding the administration of his own court.

XI. It is our conclusion, therefore, that this is the case where immunity should be denied. It is not a case where, in the words of Justice Brandeis, "judicial necessities require" that immunity be extended.

In reaching this conclusion, we wish to make it clear to the Bench and Bar that we are not in any way receding from the general rule as announced in our previous decisions. The rule is a wholesome and salutary one and should not be unduly limited or restricted. All we hold is that, under the peculiar facts and circumstances in this case, immunity should not be granted.

The case is, therefore, reversed and the order sustaining the special appearance is overruled and the order quashing the service of notice on defendant is set aside.—Reversed.

All JUSTICES concur.