**Matter of Ancillary Proceedings of EQUITABLE PLAN COMPANY.**

**No. 260, Docket 26010.**

United States Court of Appeals Second Circuit.

Argued April 5, 1960.

Decided April 15, 1960.

Lumbard, Chief Judge, dissented.

Leo B. Mittelman, New York City, for appellant, F. Patrick Dawson.

Edward C. Kalaidjian, New York City (R. Raleigh D'Adamo, Dobbs Ferry, N. Y., Thacher, Proffitt, Prizer, Crawley & Wood, New York City, on the brief), for Murray Ferguson, Trustee in Reorganization of Equitable Plan Company, appellee.

Before LUMBARD, Chief Judge, and HINCKS and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

F. Patrick Dawson, a resident of Alberta, Canada, appeals from an order denying a motion to quash a subpoena requiring him to testify in this District in the ancillary Chapter X proceedings of Equitable Plan Company. We have previously denied a motion to dismiss the appeal for lack of appellate jurisdiction, 2 Cir., 1959, 272 F.2d 158.

Dawson is the president of American LeDuc Petroleums, Ltd., and three other corporations that have filed claims in the Chapter X proceedings of Swan-Finch Oil Corporation now before Judge Palmieri in the Southern District. On August 24, 1959, Judge Palmieri ordered that the four corporate claimants appear for examination through Dawson, their president, on August 27 and that they bring with them records relating to "issues tendered by the claims filed herein and the objection and counterclaim thereto." The order was not served on Dawson but only on counsel; no subpoena was served. However, Dawson appeared as directed. At the conclusion of his testimony, he was served with a subpoena on behalf of Murray Ferguson, Trustee of Equitable Plan Company, in Chapter X reorganization in the District Court for the Southern District of California, to give testimony in ancillary proceedings being conducted by the trustee in the Southern District of New York, pursuant to § 167 of the Bankruptcy Act, 11 U.S.C.A. § 567, to investigate the management and conduct of Equita-

ble Plan Company, to locate and evaluate its assets and to enquire into fraudulent transactions by which its assets were allegedly misappropriated. The process server having neglected to give Dawson a subpoena fee in the courthouse, Dawson was served with another subpoena later in the day while boarding a plane for Canada at the New York International Airport, at which time the subpoena fee was tendered.

Dawson promptly moved in the Southern District to have the subpoena set aside, on the ground that he was immune from service of such process while necessarily here in the course of his voluntary appearance as a witness. The attorney for the trustee of Equitable Plan Company filed an answering affidavit. The gist of this was that Dawson was associated with Lowell M. Birrell in defrauding Swan-Finch and Equitable as well as a number of other corporations, and that the trustee of Equitable "desires to examine Dawson about several transactions by which the assets of Equitable were looted"; these we shall describe later.

Judge Weinfeld denied Dawson's motion to quash the subpoena. He held that the immunity of a witness "is founded in the necessities of judicial administration and the Court may, in its discretion, extend or withhold it as those necessities require. Lamb v. Schmitt, 285 U.S. 222 [52 S.Ct. 317, 76 L.Ed. 720] (1932)," and that if "Equitable Plan Company and Swan-Finch Oil Corporation are victims of the same frauds and conspiracies, which it is charged were perpetrated principally by Birrell, with the connivance of others, including in some instances Dawson, then to uphold immunity in this case would be to impede rather than to aid justice." From this denial Dawson appeals.

The rule giving certain witnesses, parties and attorneys in civil cases immunity from civil process during the period necessarily required for their appearance has deep roots in history. Judge L. Hand's opinion in Dwelle v. Allen, D.C.

S.D.N.Y.1912, 193 F. 546, 548 traces the immunity of a witness who has appeared voluntarily at least as far back as Rex v. Keel, 3 Douglas 45, 47 (1782), and shows that the only point there thought to require discussion was one that rings strangely in modern ears, namely, whether the immunity extended to a witness appearing voluntarily rather than under compulsion. In any event nearly two centuries are quite long enough—particularly in the light of Stewart v. Ramsay, 1916, 242 U.S. 128, 130, 37 S.Ct. 44, 61 L.Ed. 192, where the Court cited the oft-quoted statement in Parker v. Hotchkiss, C.C.E.D.Pa.1849, 18 Fed.Cas. pages 1137, 1138, No. 10,739, sustaining the immunity as "the privilege of the court" and explaining that "it is founded in the necessities of the judicial administration." While, as pointed out by Judge Wyzanski in United States v. Conley, D.C.Mass.1948, 80 F.Supp. 700, 701, the usual rationale of the immunity, namely "to encourage voluntary attendance of suitors and litigants who might stay away if they feared service of process in other litigation" may be historically inaccurate as shown by Judge Hand, it has nevertheless long been thought a good one. However, the rule of immunity can serve this purpose only if it is sufficiently definite that prospective witnesses and their legal advisors can determine the scope of its protection with some degree of reliability. A witness will hardly be induced to come into a foreign jurisdiction to testify if all his lawyer can tell him is that he will be immune from process unless a judge determines that this would impede justice rather than aid it.

We do not read Lamb v. Schmitt, 1932, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 as laying down so broad an exception to the rule of immunity as the District Judge thought, and the reason just discussed disinclines us to extend it. That case, as stated in Mr. Justice Stone's opinion, was a companion to Lamb v. Cramer, 1932, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715. Suit had been brought in the Northern District of Mississippi to

set aside allegedly fraudulent transfers made by one Holland to other defendants. Lamb was in attendance as Holland's attorney. While there, Lamb was served with process in an ancillary suit for "the recovery of a part of the funds involved in the first suit, paid, *pendente lite*, as fees to Lamb * * *" 285 U.S. at page 224, 52 S.Ct. at page 318. The denial of immunity was rested upon the ground, 285 U.S. at page 228, 52 S.Ct. at page 319, that "the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." See Kirtley v. Chamberlin, Iowa, 1958, 93 N.W.2d 80.

This was not at all the case here. The cause "for the protection of which it [the immunity] is invoked" was the Chapter X proceeding of Swan-Finch. The matters on which the trustee of Equitable Plan Company sought to examine Dawson were not a part of any relief being sought by the trustees of Swan-Finch. The Equitable trustee sought to examine Dawson on three transactions. One involved indebtedness to Equitable created by Cuban Canadian Petroleums, Ltd. which has not been paid, another the possible use of monies of Equitable's depositors to finance American LeDuc Petroleums, Ltd. and create and support a market for its stock, and the third delivery to Equitable by B & B Realty Company of a mortgage on certain property in New Jersey. Birrell and others of his associates were allegedly involved in some or all of these transactions. There is no claim that anything that might be unearthed in this examination would increase the estate of Swan-Finch or even, if that were relevant, develop any claim by the Equitable trustee in regard to that estate. We see no basis, either in reason or in authority, for holding that a witness testifying in regard to a claim against or a wrong done to a party in one proceeding is not immune from the service of process requiring him to testify as to an alleged wrong to another, see New England Industries v. Margiotti, 1st

Dept., 270 App.Div. 488, 60 N.Y.S.2d 430, affirmed 1946, 296 N.Y. 722, 70 N.E. 2d 540; and surely there is no reason for a different view because the witness is claimed to have had the same associates in both transactions. Page Co. v. MacDonald, 1923, 261 U.S. 446, 43 S.Ct. 416, 67 L.Ed. 737, upheld the immunity of a plaintiff attending her state court suit against service of process in a federal suit brought by the state court defendant on the ground that the state court suit was a deliberate and malicious libel—a relationship between the two proceedings far closer than is alleged here. We applaud the efforts of the Equitable trustee to unravel the tangled skein left by Birrell and his associates, see Pettit v. Doeskin Products, Inc., 2 Cir., 1959, 270 F.2d 95, 99, certiorari denied 1960, 362 U.S. 910, 80 S.Ct. 660, 4 L.Ed.2d 618. But the rule which we must here enforce embodies the wisdom of decades and transcends the hardest case.

The order denying the motion to quash is reversed.

LUMBARD, Chief Judge (dissenting).

All the reasons my brothers give for questioning the subpoena seem to me to support the contrary result. The companies and transactions concerning which it is sought to examine Dawson were all involved, or may well have been involved, in the means by which Lowell Birrell and certain of his dupes siphoned large amounts of money from one company to another so that thousands of innocent investors have been defrauded of $10,000,000 or more. See Pettit v. Doeskin Products, Inc., 2 Cir., 1959, 270 F.2d 95, certiorari denied 1960, 362 U.S. 910, 80 S.Ct. 660, 4 L.Ed.2d 618, for but part of the story of Birrell's manipulations.

Of course the trustee cannot state all that he may be able to show by examining Dawson, or even whether it will enable him to trace assets which he may eventually recover for the estate. But surely it is abundantly clear, as Judge

Weinfeld found, that it would far better serve the interests of justice to examine Dawson. I think this is what Lamb v. Schmitt, 1932, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720, holds. The matter lies within the discretion of the district court, the discretion was wisely exercised and we should affirm Judge Weinfeld's denial of the motion to quash.