K. E. BACHMAN, Appellee, v. IOWA STATE HIGHWAY COMMISSION et al., Appellants.

No. 46689.

OCTOBER 16, 1945.

John M. Rankin, Attorney General, G. H. Clark, Jr., Assistant Attorney General, and James E. Coonley, Special Counsel, of Hampton, for appellants.

Lundy, Butler & Lundy, of Eldora, for appellee.

SMITH, J.—The petition alleges a contract between the commission and plaintiff by the terms of which plaintiff was to furnish and did furnish one thousand cubic yards of crushed stone at $1.86 per cubic yard for road maintenance. The stone was to be delivered at certain locations "in neat piles of regular shape and contour." Final quantities were to be determined "by taking cross sections of the stockpile."

It further alleges that while plaintiff furnished the full amount of stone in piles, according to the contract, defendants, without plaintiff's consent or knowledge, and before measurements were or could be made, hauled or caused to be hauled therefrom a large quantity, the exact amount being unknown to plaintiff, and scattered it upon the highway and otherwise

used it so that measurements could not thereafter be made, and thereby converted it to their own use. It is also alleged that measurement was refused and that said removal of material before measurement was malicious in law and a fraud upon plaintiff.

The petition alleges that the sum of $1,099.64 has been paid him and a balance of $760.36 is still due; that it was the legal duty of defendants and each of them to measure the stone promptly and to do such things as would cause the proper warrants or orders to be issued to pay plaintiff; that the conversion was willful and with full knowledge by all defendants "of the results complained of being bound to occur"; and that the acts complained of were done by or at the direction of those defendants in office prior to July 1, 1943, and all acts required to be performed if plaintiff's prayers be granted will be performed by those now holding office or by their successors.

The prayer of the petition asks the court to decree some method (in lieu of the one provided in the contract) for ascertaining the amount of stone furnished, and to require such defendants as have authority to do so to audit the amount and approve it for payment and issue such voucher or other instrument as will cause payment to be made; and if for any reason payment may not be so made, that plaintiff have judgment against each defendant "personally found to be responsible for the unlawful acts or failures" to act.

The special appearance on behalf of all defendants urges that the court has no jurisdiction of person or subject matter because:

(a) The petition shows the defendant commission is a department and agency of the state and all defendants were acting in governmental capacity and the suit is in fact against the state without its consent and any judgment or decree would of necessity be against the state and payable out of its primary-road fund;

(b) The contract is in fact with the state and the only remedy for its breach is legislative and not judicial, in absence of consent of the state to be sued;

(c) The suit purports to be in mandamus and attempts

to control the manner in which defendants shall exercise judgment and discretion in disbursement of state funds upon an unliquidated claim; and

(d) The relief sought contemplates acts, judgment, and discretion of officers not made parties to the suit.

The foregoing is an abbreviated but fair summary of the petition and special appearance. The allegations of the petition are not entirely consistent with each other in that a claim on contract is alleged, implying delivery and passing of title, with the amount or quantity to be determined; and also one based on tort for alleged conversion of plaintiff's property or wrongful acts which have made ascertainment of the amount due him impossible in the manner provided in the contract.

I. In ruling on the special appearance the trial court properly points out that the petition makes charges against the individual defendants in their personal, as distinguished from their official, capacity. It asks alternative personal judgment against such of them as may be "found to be responsible for the unlawful acts or failures alleged."

We think the trial court properly overruled the special appearance "in so far as the defendants are before the court as individuals." No question of jurisdiction of either person or subject matter is involved in that aspect of the case. If any individual defendant has incurred personal liability he cannot claim immunity merely because he is an officer of the state. 49 Am. Jur., States, Territories, and Dependencies, section 94, note 18, and cases cited.

The sufficiency of the petition to make out a cause of action for personal liability cannot be tested by special appearance. If any defendant claims the alleged wrongful act was performed by him in his official capacity under such circumstances as to create governmental immunity and relieve him from personal responsibility he must raise the question in some other way. Anderson v. Moon, 225 Iowa 70, 279 N. W. 396. If the fact appears on the face of the petition he may, of course, raise it by motion; otherwise, by trial on the merits.

We are not to be understood as expressing any opinion as to whether the petition here does state a cause of action against any defendant in his individual capacity.

II. The special appearance of the commission and the individual defendants in their *official* capacities presents a different question. Appellants rely upon the rule of "state immunity" and contend that the suit is in fact against the state. That involves a jurisdictional question and special appearance is a proper method of raising it.

The conclusion of the trial court is stated as follows:

"It would appear, therefore, that were this a simple action to compel the audit and payment of the account the special appearance on behalf of the commission and its members would be good. But can it be said that under the allegations of the petition, that the stalemate of which plaintiff complains is not due to arbitrary and capricious action on the part of the board? Would a court be powerless to order the board to make an honest effort to ascertain the actual yardage furnished? Would a court be powerless to punish for refusal to obey such an order?

"It is true that the prayer asks for more, but this would not prevent the court from granting less.

"Another question which appears is, are not these defendants asking too much of the court on a special appearance? They are in a twilight zone of the law, a place where the sharp lines of distinction have not been finally drawn; where procedural opinion merges into the substance. The situation is not sufficiently clear on the merits to be disposed of by the form.

"In view of this lack of certainty it would seem reasonable that the commission and its officers should be required to raise their contentions by way of the usual method. The Special Appearance is therefore overruled as to them and they are given exceptions."

It is necessary to remember that we have here presented the sole question of *jurisdiction.* We are not concerned with questions as to the appropriateness of the remedy of mandamus or whether a cause of action is alleged. These might be raised by motion or otherwise as affecting the sufficiency of the petition or subsequent proof. But the only jurisdictional question presented is the one that relates to the doctrine of state immunity from judicial attack.

The doctrine "that a sovereign state may not be coerced by the exercise of judicial power" is fundamental and is well stated by Justice Evans in Hollingshead Co. v. Board of Control, 196 Iowa 841, 842, 195 N. W. 577. See, also, De Votie v. Iowa State Fair Board, 216 Iowa 281, 249 N. W. 429. The difficulty is to determine when an action or suit against an officer or agency of the state is within the rule of immunity. We have held that the Highway Commission is an agency of the state and within the rule in a proper case. Long v. State Highway Comm., 204 Iowa 376, 213 N. W. 532.

Not every suit against a state agency is held to be against the state within the meaning of the immunity doctrine. See, e. g., Hoover v. Iowa State Highway Comm., 207 Iowa 56, 61, 222 N. W. 438, 440; Pierce v. Green, 229 Iowa 22, 294 N. W. 237, 131 A. L. R. 335. But these are not cases in which it was sought to fasten liability upon the state.

In the Hoover case just cited plaintiff sought to enjoin defendants from establishing a road through his orchard. In denying the plea of immunity, we said:

"Appellant does not attempt to obtain money from the state, or interfere with its sovereignty or the administration of its affairs through proper agencies."

This language is quoted with approval in Pierce v. Green, supra, 229 Iowa, at page 33, 294 N. W., at page 245. It indicates one test, at least, by which to determine whether a suit against a state agency is in fact one against the state.

The subject is dealt with at some length in 49 Am. Jur., States, Territories, and Dependencies, sections 92, 93, and 94. Commencing at the bottom of page 304, section 92, it is said:

"The rule is now well settled that a suit against an officer of a state as representing the state in action and liability, where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the officer as an individual, could operate to control the action of the state or subject it to liability, is to be deemed a suit against the state, and is not maintainable unless the state has consented to be sued."

The quotation might be carried further but we have given enough to indicate its substance.

In 59 C. J., States, sections 463, 464, the same rule is announced:

"Accordingly it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, *is the real party against which relief is sought* so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state *or subject it to liability,* the suit is in effect one against the state and cannot be maintained without its consent." Section 464. (Italics supplied.)

It is not necessary here to discuss the cited cases in detail, either those where suit was allowed to be maintained or those held to be against the state and within the rule of immunity. We have been unable to find any case, either of this court or elsewhere, in which it has been held that plaintiff, who clearly could not sue the state directly for a personal money judgment, may accomplish the same result by mandamus against the proper state officials to compel them to pay the claim out of the state treasury.

That is in effect what is sought here against these defendants *as state officers or agencies.* If there is any legal liability on account of wrongful acts already committed by the individual defendants, that question may be litigated against them individually in the further progress of the case. But whether the claim for damages be considered to be in tort for wrongful conversion of plaintiff's property, or for breach of plaintiff's contract with the state, it cannot be asserted against the state, directly or indirectly, and payment compelled out of state funds. As to that, plaintiff's remedy is legislative and not judicial.

The case of Wilson v. Louisiana Purchase Exposition Comm., 133 Iowa 586, 588, 110 N. W. 1045, 1046, 119 Am. St. Rep. 646, is conclusive here. In it plaintiff sought by mandamus

to compel payment of his claim out of state funds by the same indirect method as is attempted here, i. e., by compelling defendants to audit and approve it and execute voucher for its payment. The opinion says:

"It is fundamental that a State cannot be sued in its own courts without its consent, and it is a further rule that a litigant will not be permitted to evade the general rule by bringing action against the servants or agents of the State to enforce satisfaction for claims."

In Pierce v. Green, supra, 229 Iowa 22, 32, 294 N. W. 237, 245, 131 A. L. R. 335, referring to this Wilson case and others, it was pointed out:

"In none of these civil cases was the state or its arm, board, or agency suable. The suits were for money demands and no one can seriously contend that action could be brought against the state or any arm or agency of the state."

See, also, annotation 44 L. R. A., N. S., 189 et seq., wherein it is repeatedly stated that it is the nature of the relief demanded that determines whether the suit against the officer is in fact against the state.

The trial court concedes that, "were this a simple action to compel the audit and payment of the account the special appearance on behalf of the commission and its members would be good." But after we eliminate from our consideration the claim against the individual defendants, *as individuals,* what remains except the effort to compel payment out of road funds belonging to the state?

The trial court asks: "Would a court be powerless to order the board to make an honest effort to ascertain the actual yardage furnished?" One ready answer is that this is not what is sought by plaintiff. The petition prays that "some fair, equitable and proper ascertainment * * * *be adopted and approved by the Court"*; and "That *the Court* ascertain the amount of yardage * * * ."

Again, even if it were asked, the contract fixes the manner of ascertainment or measurement. The petition alleges that

because of wrongful acts of defendants this method is now impossible. But the court cannot write a new contract for the parties. The amount of yardage becomes, then, a matter of proof *by evidence,* and no court of equity could prescribe in advance what form that proof should take, or compel a party "to make an honest effort to ascertain the actual yardage."

Furthermore, ascertainment of the yardage, if not accompanied by a decree or judgment compelling payment by someone, would be an utterly useless procedure. It could serve no legal purpose and could not be the subject of abstract legal determination.

We are constrained to hold that the special appearance on behalf of defendants in their official capacities as collectively constituting an agency or arm of the state should have been sustained on the ground of state immunity.

It is proper to point out that this result is reached without discussing whether the acts sought to be mandated are ministerial or discretionary in character. That consideration would be important upon a motion to dismiss or other challenge to the sufficiency of the petition to state a cause of action. It does not, however, go to the question of *jurisdiction,* which is the only one we have here.

For the reasons stated, the decision overruling the special appearance of defendants in their individual characters is affirmed; in other respects the case is reversed and the special appearance sustained.—Affirmed in part; reversed in part.

MILLER, C. J., and OLIVER, BLISS, GARFIELD, WENNERSTRUM, MANTZ, and MULRONEY, JJ., concur.

HALE, J., not sitting.