GEORGE & LYNCH, INC., a corporation of the State of Delaware, Defendant Below, Appellant, v. THE STATE OF DELAWARE, Plaintiff Below, Appellee.

(*February* 10, 1964.)

TERRY, C. J., WOLCOTT and CAREY, J. J., sitting.

*David F. Anderson* and *Richard L. McMahon* (of Berl, Potter and Anderson) for George & Lynch.

*Samuel R. Russell* (of Herrmann, Bayard, Brill and Russell) for the State.

Supreme Court of the State of Delaware, No. 69, 1963.

WOLCOTT, Justice.

This is an appeal from an order dismissing a counterclaim on the ground of sovereign immunity.

George & Lynch, Inc., is a general contractor and in the past has entered into contracts with the State Highway Department of the State of Delaware for the construction of roads. Under these contracts George & Lynch was to supply labor and material, and the State was required to pay certain moneys for the labor and material thus supplied.

This action was instituted by the State of Delaware claiming that on certain of the contracts entered into between the parties, improper payments were made to George & Lynch. By way of defense, *inter alia*, George & Lynch filed a counterclaim alleging that on certain other contracts between the parties it had not received payment in full. The court below entered judgment on the counterclaim in favor of the State of Delaware and against George & Lynch upon the authority of a decision of this Court, *Shellhorn & Hill, Inc. v. State*, Del., 187

A.2d 71.

Shellhorn & Hill was an action against the State for wrongful death allegedly caused by the negligence of the State Highway Department. The defense of sovereign immunity to suit was interposed and judgment entered for the State by the trial court. On appeal we held that the doctrine of sovereign immunity to suit had been written into our Constitution of 1776 and, thereafter, had been continued in the successive Constitutions of the State in Article I, § 9, *Del. C.*, of each document. We pointed out that while the State could claim the defense of sovereign immunity, nevertheless, the defense could be waived by legislative act and only by legislative act.

The Shellhorn & Hill case, of course, dealt with an actin in tort, and we suggested for the consideration of the General Assembly that in such class of actions it would be highly proper for the General Assembly by statute to prescribe a manner for the enforcement of such claims against the State, thus waiving the doctrine of sovereign immunity at least to a limited extent. In Shellhorn & Hill we were not concerned specifically with actions brought against the State for breach of contract. This, we think, is clear from the opinion.

Nevertheless, the court below, in reliance upon the Shellhorn & Hill case, permitted the defense of sovereign immunity in an action *ex contractu.* While the precise question before the Court was the allowance of a counterclaim, it is nevertheless, we think, to be determined as though an attempt had been made to sue the State of Delaware upon the claim on which the counterclaim is based.

George & Lynch argues before us, as it argued below, that our first Constitution of 1776 wrote into our basic law the doctrine of sovereign immunity as it then

existed at Common Law. We think the position of George & Lynch with respect to this fundamental question is correct. Shellhorn & Hill, supra.

George & Lynch then proceeds to argue that at Common Law suits for breach of contract were permitted as of right against the Crown, while suits for actionable wrongs—that is, torts—were prohibited against the Crown. In support of this argument George & Lynch cites The Bankers Case, 87 Eng.Repr. 500, decided prior to 1700. The Bankers Case was referred to extensively in a later case, *Thomas v. The Queen*, 1874 L.R. 10 Q.B. 31, in the course of which it was pointed out that in The Bankers Case an action for breach of contract was permitted against the Crown.

However, it appears that the method of proceeding against the Crown for breach of contract was by Petition of Right. Whether or not a Petition of Right could force the appearance of the Crown in an appropriate court to answer for breach of contract or property right is not clear. It is described as being "in the nature of an action against a subject, in which the petitioner sets out his right to that which is demanded by him, and prays the King to do him right and justice." 2 Bouvier's Law Dictionary, Rawle's Third Revision, page 2579; 1 Daniell's Chancery Pleading & Practice (4th Ed.) 131. It seems that some action by the Crown in the nature of permission was required to permit the cause to continue. This may have been merely a perfunctory step but, on the other hand, it may have been an act of grace on the part of the Crown, in which event it may be doubtful that the Crown could be compelled unwillingly to answer the petitioner's claim.

In any event. however, we think we do not have to decide the question. We are of this opinion because,

even if we assume that Shellhorn & Hill was intended to embrace actions *ex delicto* and actions *ex contractu*, a point we are doubtful about, nevertheless the holding is clear that the General Assembly may in its wisdom waive the defense of sovereign immunity in actions against the State, whether or not they sound in tort or contract.

■ ■ By 17 *Del. C.* § 132(b) (9), the State Highway Department is authorized to "make and enter into any or all contracts, agreements or stipulations." It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. 1 Williston on Contracts (3rd Ed.) § 1. It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract.

Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens. We are unwilling to assume that the General Assembly intended the State to mislead its citizens into expending large sums to carry out their obligation to the State and, at the same time, deny to them the right to hold the State accountable for its breach of its obligations. To state the proposition is to demonstrate its injustice; indeed, so unjust is it that it might amount to the taking of property without due process of law. *Cf. State ex rel. Smith v. 0.24148, 0.23831 and 0.12277 Acres of Land (Fenimore)*, 3 Storey 439, 171 A.2d 228; *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372.

■ Thus it is that 17 *Del. C.* § 132(b) (9) is a waiver by the General Assembly of the defense of sovereign

immunity in suits brought upon contracts entered into by the State Highway Department. As such, it is a "regulation * * * made by law" within the meaning of Article 1, § 9 of the Constitution which authorizes the General Assembly to waive the defense by such means.

We note that this result has been reached in a number of our sister states under somewhat comparable constitutional and statutory provisions. See *Ace Flying Service, Inc. v. Colorado Department of Agriculture*, 136 Colo. 19, 314 P.2d 278; *W. H. Knapp Co. v. State Highway Dept.*, 311 Mich. 186, 18 N.W.2d 421; *Meens v. State Board of Education*, 127 Mont. 515, 267 P.2d 981; *Humphreys v. J. B. Michael & Co.* (Ky.), 341 S.W.2d 229.

The State argues, however, that in *Farmers' Bank of Delaware v. Ball*, 2 Pennewill 374, 46 A. 751, the Superior Court held that the State of Delaware could not be sued for breach of contract. This case held only that the State was not subject to the writ of garnishment. While the Court did give as one reason for its decision that the State could not be sued without its consent, the point was not squarely raised. Furthermore, there was no showing whatsoever of the consent or waiver of the defense by the State. The case is not in point and, if it should be considered to be contrary to the views we have expressed, we overrule it to this extent.

██ It follows, therefore, that a party contracting with an agency of the State authorized by law to enter into contracts has all the remedies under that contract which any private citizen has against another private citizen, including the right to sue for the breach thereof. Accordingly, the holding below that the counterclaims are barred as a matter of law because of the defense of sovereign immunity must be reversed.

The State, however, in the alternative, argues that George & Lynch has released any claim it may have had against it for breach of the other contracts upon which the counterclaim is founded. The argument is based upon Standard Specification No. 75 appearing in those contracts which provides that, after inspection of the work by the State and the payment of the entire sum found to be due following that inspection, the acceptance by the contractor of such last payment shall operate and be a release to the State from all claims from liability. Filed in support of the argument is an affidavit of an official of the State Highway Department averring George & Lynch had accepted final payments under all of the contracts used as the basis for the counterclaim and that, thereby, the State had been released.

In opposition to this argument George & Lynch points out that a material dispute of fact is involved as to the matter of the release because of its contention that it has not received final payment on the contracts forming the basis of the counterclaim. It denies the State's contention that it has in fact accepted such final payment.

We think there is an issue of fact as to this and that there is insufficient in the record to determine this issue. The case therefore must go back for trial.

The judgment below on the counterclaim is reversed and the cause remanded for further proceedings not inconsistent with this opinion.