Mary MEGEE, Appellant,

v.

**B. L. BARNES, as Dean of the College of Business Administration of the University of Iowa, and Ray B. Mossman, as Business Manager and Treasurer of the University of Iowa, Appellees.**

**No. 53015.**

Supreme Court of Iowa.

Sept. 5, 1968.

Nolan, Lucas & Nolan, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., and Arthur O. Leff, Special Counsel, Iowa City, for appellees.

GARFIELD, Chief Justice.

Plaintiff brought this action in mandamus against two officials of the University of Iowa to compel payment of her claim for alleged breach of contract of employment as a research associate at the institution. The trial court ruled the action was in reality one against the state which would not lie without its consent. Plaintiff has appealed from judgment dismissing the action pursuant to the ruling. We affirm.

Plaintiff's petition alleges she was employed by the University as research associate in the College of Business Administration for one year commencing July 1, 1966 as shown by copy of the memorandum of employment (exhibit A) made part of the petition; on September 12, 1966 the University, through the dean of the college, wrongfully breached the contract by discharging plaintiff as shown by letter, (exhibit B) also made part of the petition; plaintiff has attempted without success to get like employment; the contract was valid and it was the duty of defendants, the dean and business manager-treasurer of the University, to carry it out; plaintiff attempted to perform her part of the contract but was prevented from doing so by the breach above referred to; there is owing plaintiff the amount specified in exhibit A for the period from October 12, 1966 to July 1, 1967; plaintiff has no speedy or adequate remedy at law.

Prayer of the petition is that a writ of mandamus issue compelling defendant dean to certify to the business manager-treasurer of the University the amount claimed to be owing plaintiff under her contract exhibit A and directing the latter official to pay such amount, and for such other relief as is equitable.

Exhibit A is a letter from the president of the University to plaintiff dated July 1, 1966 informing her she had been appointed, subject to law and general University policies, "Res. Assoc." in the College of Business Administration, Bureau of Business and Economic Research, at a current salary of $12,000 with certain deductions for a retirement program, insurance and social security. Nothing in the exhibit refers to the period of plaintiff's employment unless it be the amount of her current salary.

Exhibit B, the letter from the dean, dated September 12, 1966, notifies plaintiff her employment by the University would terminate October 12, 1966 as the result of her failure to function cooperatively and effectively with the director and staff of the Bureau of Business and Economic Research; her work in the Bureau would cease immediately and she would be on vacation until the termination date.

The first ground of defendants' motion to dismiss is that the University is the educational arm of the state and as such is not subject to suit. The second ground asserts plaintiff's action is actually against the University and the individual defendants as officers thereof are within the immunity which covers it.

Plaintiff's resistance to the motion asserts in part that her right to payment for her services was legally agreed upon by the State of Iowa through defendants and others on behalf of the University.

As before indicated the court ruled plaintiff was attempting to recover for breach of contract from the state which was immune from suit and the action would not lie.

I. We have held many times the state is not subject to suit without its consent. The immunity is from suit, not from liability.

Rule 9 of the Rules of Civil Procedure, reported by us to the legislature in January, 1943, effective July 4, 1943, gives recognition to the rule just stated in this language: "The state may sue in the same way as an individual. * * * It may be sued as provided by any statutes in force at the time." No statute has been cited or

come to our attention which provides the state may be sued in such an action as this.

■ The legislature must be held to have known the language of Rule 9 and to have approved it. We have repeatedly held these rules have the force and effect of statutes. Krebs v. Town of Manson, 256 Iowa 957, 960, 129 N.W.2d 744, 746 and citations; Kutrules v. Suchomel, 258 Iowa 1206, 1211, 141 N.W.2d 593, 596 and citations.

The legislature has given the consent of the state, upon the conditions provided in section 613.8 Code 1966 for its protection, that it be made a party to any action involving (1) the title to real estate, (2) partition thereof, (3) foreclosure of liens or mortgages against real estate or (4) the determination of priorities of liens or claims against real estate, for the purpose of obtaining an adjudication as to any such mortgage or other lien or claim. (Section 613.8)

Section 613.12 provides the state waives immunity from suit and consents to the jurisdiction of any court in which an action is brought against the state highway commission respecting any claim, right or controversy arising out of the work performed or by virtue of the provisions of any construction contract entered into by the commission.

■ It is at once apparent the present action is not of the kind in which the state has waived its immunity from suit in either 613.8 or 613.12. It is also apparent that if the state enjoyed no such immunity both these statutes were wholly unnecessary.

■ Further, by express mention of the forms of action in which the state consents to be sued and waives its immunity from suit the legislature impliedly excluded others. "The legislative intent is expressed by omission as well as by inclusion." State v. Flack, 251 Iowa 529, 533–534, 101 N.W.2d 535, 538, and citations; Dotson v. City of Ames, 251 Iowa 467, 471–472, 101 N.W.2d

711, 714; North Iowa Steel Co. v. Staley, 253 Iowa 355, 357, 112 N.W.2d 364, 365. See also Graham v. Worthington, 259 Iowa 845, 855, 146 N.W.2d 626, 633.

Immunity of the state from suit without its consent is widely recognized. We refer to some of the general statements of the rule.

81 C.J.S. States § 214, reads in heavy type "A state, by reason of its sovereign immunity, is immune from suit and it cannot be sued without its consent in its own courts * * *."

Collins v. State Board of Social Welfare, 248 Iowa 369, 372–373, 81 N.W.2d 4, 6, cites the above section of C.J.S., Rule 9 R.C.P., supra, and several Iowa decisions for this:

"The law is well settled, and conceded by Appellee, that in the absence of specific consent by the State, it or its agencies may not be sued in an action to obtain money from the State or to interfere with its sovereignty or the administration of its affairs through proper agencies."

Wittmer v. Letts, 248 Iowa 648, 653, 80 N.W.2d 561, 564, holds there is no immunity from liability of a county hospital for injury to a paying patient from negligent maintenance of the hospital. The opinion thus points up the difference between such an action against a county and one like this which is really against the state: "Under the ancient common law the Sovereign, generally speaking, could not be sued and this policy has come down to us and is now found in our statutes. 58 I.C.A. Rule 9, R.C.P., and Section 613.8, Code 1950 I.C.A. Thus the State is immune from suit rather than from liability." (page 650 of 248 Iowa, page 562 of 80 N.W.2d)

Montandon v. Hargrave Construction Co., 256 Iowa 1297, 1299–1301, 130 N.W.2d 659, 660–661, quotes with approval 81 C.J.S. States § 214, supra, and cites Wittmer v. Letts for the proposition "Except where consent has been given by the legis-

lature the state is immune from suit." The Montandon opinion also points out that abrogation of the doctrine of governmental immunity "has generally applied to municipal corporations and not to the State except where legislative consent appears. * * *

"The statutes and decisions relating to municipal corporations do not apply to a suit against the State. Section 368.2, Code of Iowa, I.C.A., authorizes suits against cities and towns. There is no such statute authorizing suits against the State.

"The (highway) commission is an arm of the State, and unless legislative consent appears is not subject to suit in this case. Rhodes v. Iowa State Highway Commission, 250 Iowa 416, 419, 94 N.W.2d 97, 99."

Referring to what is now Code Section 613.12, summarized supra herein, the Montandon opinion quotes with approval this rule from 82 C.J.S. Statutes § 391, for construction of statutes in derogation of state sovereignty:

"Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights or remedies, unless the intention of the legislature to effect this object is clearly expressed." (page 1303 of 256 Iowa, page 662, 130 N.W.2d). To like effect are United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058, 1063 and citations, (Stone, J.). See also Dalehite v. United States, 346 U.S. 15, 24, 31, 73 S.Ct. 956, 97 L.Ed. 1427, 1438; Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389, 396.

Graham v. Worthington, supra, 259 Iowa 845, 861, 146 N.W.2d 626, 637, repeats with approval the quotation set out supra from Wittmer v. Letts, supra, 248 Iowa 648, 650, 80 N.W.2d 561, 562. The Graham opinion also points out the distinction between political subdivisions of the state such as cities, school districts and counties and officers, agents and employees thereof, on the one hand, and officers, agents and employees of the state acting within the scope of their office or employment, on the other hand. (pages 854–855 of 259 Iowa, page 633 of 146 N.W.2d.)

This statement of the rule of immunity of the state from suit appears in 49 Am. Jur., States, Territories and Dependencies, section 91, pages 301–304:

"It is an established principle of jurisprudence in all civilized nations, resting upon grounds of public policy, that the sovereign cannot be sued in its own courts or in any other court without its consent and permission. It is inherent in the nature of a sovereignty not to be amenable to the suit of an individual without its consent, and this principle applies with full force to the several states of the Union. No suit, whether at law or in equity, is maintainable against the state * * * by its own citizens, * * * unless by statute it has consented to be sued or has otherwise waived its immunity from suit. The legislature is the proper body to authorize suits against the state. The immunity of the state from suit applies where a contract or property interest of the state is involved."

Among numerous citations in support of the quoted statement is Hampton v. State Board of Education, 90 Fla. 88, 105 So. 323, 42 A.L.R. 1456. And see Anno. page 1464 et seq; Dunn v. Schmid, 239 Minn. 559, 562, 60 N.W.2d 14, 16, and other citations in Note 42 to Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795, 803; Note to Beers, etc. v. State of Arkansas, 20 How. 527, 15 L.Ed. 991.

Corbin on Contracts, Vol. 1, section 146 states: "The promises of a sovereign government, including those of the United States, cannot be enforced in the courts unless there is definite legislation authorizing such action."

Many Iowa decisions supporting our conclusion that the state is immune from such a suit as this in the absence of legislative consent thereto also include Wilson v. Louisiana Purchase Exposition Comm., 133 Iowa 586, 588, 110 N.W. 1045, 1046, 119 Am.St.Rep. 646; Hollingshead Co. v. Board of Control, 196 Iowa 841, 842–843, 195 N.W. 577 and citations; Cross v. Donohoe, 202 Iowa 484, 210 N.W. 532; Bachman v. Iowa State Highway Comm., 236 Iowa 778, 783–784, 20 N.W.2d 18, 20–21; Yoerg v. Iowa Dairy Industry Comm., 244 Iowa 1377, 1387, 60 N.W.2d 566, 571.

The Yoerg opinion discusses Bachman v. Iowa State Highway Comm., supra, at length and other authorities are also analyzed.

This from the Bachman opinion may be repeated here: "But whether the claim for damages be considered to be in tort for wrongful conversion of plaintiff's property, or for breach of plaintiff's contract with the state, it cannot be asserted against the state, directly or indirectly, and payment compelled out of state funds. As to that, plaintiff's remedy is legislative and not judicial." (page 784 of 236 Iowa, page 21 of 20 N.W.2d)

See also Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121, 1125; Perry v. United States, 294 U.S. 330, 352, 354, 55 S.Ct. 432, 79 L.Ed. 912, 918, 919 (Hughes, C. J.); Foley Construction Co. v. Ward, Ky., 375 S.W.2d 392, 395–396; University of Maryland v. Maas, 173 Md. 554, 197 A. 123.

II. As we have indicated, there is little doubt plaintiff's action is in reality against the state, rather than the two nominal defendants, to compel payment of her claim from state funds. The resistance to defendants' motion to dismiss in effect so concedes and we do not understand plaintiff to contend here the action is not against the state, at least indirectly.

■ This general rule appears in heavy type in 81 C.J.S. States § 216b(1), p. 1311:

"Where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability and the state is the real party against which relief is sought so that a judgment for plaintiff will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent." Yoerg v. Iowa Dairy Industry Comm., supra, 244 Iowa 1377, 1379, 60 N.W.2d 566, 567, quotes this with approval.

The Yoerg opinion also quotes this with approval from Ford Motor Co. v. Department of Treasury of State of Indiana, supra, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389: "And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." (page 1383 of 244 Iowa, page 569 of 60 N.W.2d)

81 C.J.S. States § 216b(1) is also cited with approval in Collins v. State Board of Social Welfare, supra, 248 Iowa 369, 372–373, 81 N.W.2d 4, 6.

Substantially the same rule thus appears in 49 Am.Jur., States, Territories, and Dependencies, section 92, page 304: "While a suit against state officials is not necessarily a suit against the state, within the rule of immunity of the state from suit without its consent, that rule cannot be evaded by bringing an action nominally against a state officer or a state board, commission, or department in his or its official capacity when the real claim is against the state itself, and the state is the party vitally interested. If the rights of the state would be directly and adversely affected by the judgment or decree sought, the state is a necessary party defendant, and if * * * it has not consented to be sued, the suit is not maintainable."

The citation from which this quotation is taken is approved in Bachman v. Iowa State Highway Comm., supra, 236 Iowa 778, 783–784, 20 N.W.2d 18, 20; Yoerg v. Iowa Dairy Industry Comm., supra, (at page 1379 of 244 Iowa, page 567 of 60 N.W.2d).

We hold this action is in effect one against the state; as explained in Division I hereof, the state is immune from suit without its consent, and this has not been given in such a case as this. Indeed, plaintiff has not contended either in the trial court or here the state has consented to be sued or waived its immunity from suit in this action or one like it.

III. We have considered the precedents plaintiff cites. We do not find them contrary to our decision here. Perhaps most relied upon is the early case of Bryan v. Cattell, 15 Iowa 538. The issue of immunity of the state from suit without its consent seems not to have been presented or decided there.

■ Plaintiff cites no authority which supports her contention she has been denied a right protected by the federal constitution. That the contention is without merit see Lynch v. United States, 292 U.S. 571, 580–582, 54 S.Ct. 840, 78 L.Ed. 1434, 1441–1442 and citations. (Brandeis, J.).

Generally in the other precedents plaintiff cites there was no attempt as here to obtain money from the state or arm or agency thereof or to interfere with its sovereignty or the administration of its affairs through proper agencies. What was attempted was protection of the plaintiff's property from appropriation or destruction by agents of the state acting without legal right and in violation of some plain provisions of statute or constitution as in Hoover v. Iowa State Highway Comm., 207 Iowa 56, 58–61, 222 N.W. 438, 439–440.

The question when action will lie against state officials is also fully discussed in Pierce v. Green, 229 Iowa 22, 31–35, 294 N.W. 237, 131 A.L.R. 335, 345–347. Of money demands such as this, the Pierce opinion observes "No one can seriously contend that action could be brought against the state or any arm or agency of the state." (page 32 of 229 Iowa, page 245 of 294 N.W. page 346 of 131 A.L.R.)

The same question is also well considered in Batcheller v. Iowa State Highway Comm., 251 Iowa 364, 368, 101 N.W. 2d 30, 33, cited by plaintiff. Bachman v. Iowa State Highway Comm. and Yoerg v. Iowa Dairy Industry Comm., both supra, are there cited for this: "Nor may the courts require defendant to pay or disburse public funds without statutory authority." The Batcheller opinion thus describes the nature of the action there sustained: "The action here is not for the payment of money from the state but * * * to require the defendant to take the proper statutory steps to acquire his (plaintiff's) property."

Plaintiff cites no authority which supports a reversal under this record.

IV. We may observe our decision does not leave plaintiff without a remedy. Code chapter 25 provides for consideration by the state appeal board of claims against the state "on which in the judgment of the comptroller the state would be liable except for the fact of its sovereignty" (section 25.1) and the recommendation of the board to the claims committee of the house and senate as to payment of the claims.

We have pointed out the legislature is in control of state funds, in that sense is the keeper of the states' conscience and presumably will honor claims against the state that are just. Hollingshead Co. v. Board of Control, supra, 196 Iowa 841, 843, 195 N.W. 577. See also Lynch v. United States, supra, 292 U.S. 571, 580–581, 54 S.Ct. 840, 78 L.Ed. 1434, 1441; Perry v. United States, supra, 294 U.S. 330, 354, 55 S.Ct. 432, 79 L.Ed. 912, 919.

■ In view of what is said as to chapter 25, it should be noted the Iowa Tort Claims

Act, passed by the 61st General Assembly, now Code chapter 25A, provides for filing, passing upon and paying claims against the state for money only, on account of damage to or loss of property or for personal injury or death by the negligent or wrongful act or omission of any state employee while acting within the scope of his employment. This act waives immunity of the state as to the class of claims for which it provides redress but has no application to such claims as this. See Graham v. Worthington, supra, 259 Iowa 845, 855, 857, 146 N.W.2d 626, 633, 634; Article by Don R. Bennett in 17 Drake Law Rev. 189.

Other grounds of defendant's motion to dismiss need not be considered. The judgment is

Affirmed.

LARSON, SNELL, RAWLINGS and LeGRAND, JJ., concur.

STUART, J., concurs specially.

BECKER, MOORE and MASON, JJ., dissent.

STUART, Justice (concurring specially).

I concur in the majority opinion but favor an additional statement expressing dissatisfaction with governmental immunity as a matter of public policy.

BECKER, Justice.

I dissent.

The sole issue before us is whether, absent specific statutory authority, the State University of Iowa or its officers as public officials, are immune from suit alleging breach of contract between the institution as an arm of the state and an individual citizen, the breach thereof and damages.

I. The majority's strong and well fortified opinion expresses the Iowa case law as it exists to this time. Except where specific consent to be sued is granted by statute the quote in Division I of the majority opinion is accurate: "[W]hether the claim for damages be considered to be in tort for wrongful conversion of plaintiff's property, or for breach of plaintiff's contract with the state, it cannot be asserted against the state, directly or indirectly, and payment compelled out of state funds. As to that plaintiff's remedy is legislative and not judicial."

This court in Boyer v. Iowa High School Athletic Association, 256 Iowa 337, 127 N.W.2d 606 refused to change the immunity rule as it applied to tort claims against the state. The dissent in the 5 to 4 decision analyzes the various reasons for abandonment of the doctrine in the tort field. An effort will be made to avoid duplication. Most, if not all of the reasons for change there cited are also applicable in the field of contracts. The legislature subsequently acted in the tort field by passage of the Iowa Tort Claims Act, code of Iowa, 1966, Chapter 25A, and Acts of the 62nd General Assembly, Chapter 405, p. 793 (in relation to units of local government).

Thus the question is not the existence of the rule, but whether the rule can and should be changed *in the contract field*. It is well to note that immunity need not be abandoned entirely in order to hold the rule inapplicable to contract actions.

II. Where the suit is based on claimed contract many courts have held the state waives its immunity from suit by authorizing its agents to enter into the contract. The broad approach mentioned by Mr. Justice Frankfurter in his dissent in Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 59, 64 S.Ct. 873, 879, 88 L.Ed. 1121, should first be noted: "But consent does not depend on some ritualistic formula. Nor are any words needed to indicate submission to the law of the land. The readiness or reluctance with which courts find such consent has naturally been influenced by prevailing views regarding the moral sanc-

tion to be attributed to a State's freedom from suability. Whether this immunity is an absolute survival of the monarchial privilege, or is a manifestation merely of power, or rests on abstract logical grounds, see Kawananokoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834, it undoubtedly runs counter to modern democratic notions of the moral responsibility of the State. Accordingly, courts reflect a strong legislative momentum in their tendency to extend the legal responsibility of Government and to confirm Maitland's belief, expressed nearly fifty years ago, that 'it is a wholesome sight to see "the Crown" sued and answering for its torts'. 3 Maitland, Collected Papers, 263."

Governmental consent to suit *in contract actions* has been recognized in several states where immunity is otherwise upheld.

In George & Lynch, Inc. v. State (1964), Del., 197 A.2d 734 the Delaware Court held at page 736: "By 17 Del.C. § 132 (b) (9), the State Highway Department is authorized to 'make and enter into any or all contracts, agreements or stipulations.' It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. 1 Williston on Contracts, (3rd Ed.), § 1. It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract."

In Ace Flying Service, Inc. v. Colorado Department of Agriculture (1957), 136 Colo. 19, 314 P.2d 278 the court said: "The request [for payment] naturally enough was filed with the other party to the legislatively authorized contract because it was that party who was authorized

by the state to make the payments. Thus the contract itself was a waiver by the state of any statutory provisions urged upon us.'"

In Georgia an employee of the state university, hired under authority of the Board of Regents, brought suit in a contract dispute; Regents of the University System of Georgia v. Blanton (1934), 49 Ga.App. 602, 176 S.E. 673 holds: "[A] state or any of its departments entering into contracts lays aside its attributes of sovereignty, and binds itself substantially as one of its citizens does when he enters into a contract, and, in general, its contracts are interpreted as the contracts of individuals are, and are controlled by the same laws" (176 S.E. at 675).

In the same vein are the following cases: Meens v. State Board of Education, 127 Mont. 515, 267 P.2d 981; Souza and McCue Construction Company v. Superior Court of San Benito, 57 Cal.2d 508, 20 Cal.Rptr. 634, 370 P.2d 338 (1962); In E. H. Morrill Company v. State, 65 Cal.2d 787, 56 Cal. Rptr. 479, 423 P.2d 551 (1967) and Todd et al. v. Board of Educational Lands and Funds of Nebraska et al., 154 Neb. 606, 48 N.W.2d 706 (1951).

In an analogous situation, action by an heir to escheated property previously collected by the state, Justice Weaver speaking for this court in McKeown v. Brown, 167 Iowa 489, 497, 149 N.W. 593, 596, stated: "III. It is objected, however, that this proceeding is in the nature of a suit against the state of Iowa, and that the court cannot properly entertain an action against a state without its consent. * * * Even if the state were a necessary party, it would be no great stretch of construction to hold that *the enactment of such statute,* recognizing the right of the heir to establish his identity after the money had been placed in the school fund, and authorizing the court, as we think it does, to enter whatever judgment is necessary to make the right effective, *is to all intents and*

*purposes a consent by the state to submit its adverse claims, if any it has, to the adjudication of such court. While the courts should exercise scrupulous care to respect the sovereignty of the state, they should not go far out of their way to relieve the sovereign from the duty of fair dealing.* The plaintiff having appeared within the time which the state itself has prescribed, and having established her right as the heir of the deceased to the satisfaction of the court having jurisdiction of the settlement of the estate, the enforcement of her rights in the premises ought not to be denied, except for reasons of the most clear and cogent character. Such reasons are not here apparent.

"It is further to be said that the act of the state in entering a voluntary appearance in the suit and in filing answer to plaintiff's claim upon its merit is a clear waiver of its right to deny its consent to the jurisdiction of the court." [1] (emphasis added)

The views expressed in the foregoing cases are essential to operation of modern government. In the instant case, the action is actually against employees of our Board of Regents which is empowered to operate the university system. Iowa Code, 1966, Chapter 262. The board has all powers necessary to operating the university and may delegate necessary powers to appropriate committees, administrative officers and faculty, Iowa Code, section 262.12. We have not reached the questions of proper delegation of power or authority of these defendants. We can never reach such questions under the result reached here.

The defendants may well have had the power to make a contract that is binding on the state. If plaintiff can prove a contract with the University which was made by lawfully authorized officers of the University, she will have proved the

first element of her case. Of course she must also prove breach of contract and damages. But, these problems do not concern us now. The first question is can the state be sued on a claimed contract? The majority's negative answer disposes of the case.

This rule, if invoked with any regularity must seriously undermine, if not destroy, the state's ability to perform its expanding governmental functions. This is at the bottom of the reasoning of the cases heretofore cited. In this situation alone we are dealing with an institution operating on a budget of $125,000,000 per year, Iowa Official Register, 1967–1968, for which the legislature appropriated in excess of $30,000,000 for the 1965–1967 biennium (the period relevant here) for salaries, support, maintenance, replacements and alterations for the State University of Iowa, Acts of the Regular Session 61st General Assembly, Chapter 4, page 36.

The myriad multi-million dollar activities constituting state government must be implemented by contracts and these contracts must command the faith and respect of our people. This cannot be achieved by assigning a claimed contractee to a legislative committee. Such committees are not equipped to settle the good faith differences between the parties in the same manner as the judiciary.

Simple justice, as well as protection of the state's good name, demands that contractees with the state be afforded the same *entree* to the courts as is afforded in contracts between individuals. Speaking of governmental immunity as a defense in suit by a highway contractor, the Delaware court concluded in George & Lynch, Inc. v. State, supra, 197 A.2d at page 736: "Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citzens.

---

1. Since this case comes to us as a result of motion to dismiss, which constitutes a general appearance, the case might be dis-

posed of by this last paragraph. However, this narrow ground should not control here.

We are unwilling to assume that the General Assembly intended the State to mislead its citizens into expending large sums to carry out their obligation to the State and, at the same time, deny to them the right to hold the State accountable for its breach of its obligations. To state the proposition is to demonstrate its injustice; indeed, so unjust is it that it might amount to the taking of property without due process of law." This is also true of employment contracts.

The view that the government waives its immunity when it enters into validly authorized contracts seems to me to be eminently sound. As a necessary corollary to such rule the alleged contractee must be given an opportunity to prove his contract and that the contract is in fact and law validly authorized. The questions of *ultra vires* acts of state officers or employees, validity and relevancy of the authorization, factual matters giving rise to the contract and other appropriate issues must all be met later. But they should not be summarily cut off by denying the proposed litigant a forum.

III. The majority opinion relies heavily on the existence of Rule 9 of the Iowa Rules of Civil Procedure, and sections 613.8 and 613.12, Iowa Code, 1966. The rule simply recognized the existence of the judicially inspired principle of governmental immunity in force at the time of adoption of the procedural rule. It does not promulgate the rule of governmental immunity. True, absent the governmental immunity principle, Rule 9 would be unnecessary but this simply gives recognition to the existence of the principle, it does not create it.

The same may be said for sections 613.8, Code, 1966 (allowing suit in matters involving real estate), 613.12 (as against the state highway commission), chapter 25A, (the Iowa Tort Claims Act) and chapter 405 of the Acts of the 62nd General Assembly (allowing suit against units of local government).

This area is well covered (albeit in a case dispensing with tort immunity) in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 and quoted in the dissent in Boyer v. Iowa High School Athletic Ass'n, 256 Iowa 337, 353, 127 N.W.2d 606, 615 as follows: "The doctrine of governmental immunity was originally court made. * * *

"The state has also enacted various statutes waiving substantive immunity in certain areas. * * *

"Nor are we faced with a comprehensive legislative enactment designed to cover a field. What is before us is a series of sporadic statutes, each operating on a separate area of governmental immunity where its evil was felt most. Defendant would have us say that because the Legislature has removed governmental immunity in these areas we are powerless to remove it in others. We read the statutes as meaning only what they say; that in the areas indicated there shall be no governmental immunity. They leave to the court whether it should adhere to its own rule of immunity in other areas."

IV. It would unduly prolong this dissent to examine the many other arguments raised against the common sense proposal that when the state makes a contract it consents to adjudication of such contract. These arguments are all answered in the cases cited and in the note, Sovereign Immunity of the States: The Doctrine and Some of Its Recent Developments, 40 Minnesota Law Review 234.

The legislature must always have empowered the state contract action in advance. Our Constitution of the State of Iowa, Article III, section 24, reads: "No money shall be drawn from the treasury but in consequence of appropriations made by law." Section 31 states in part: "nor, shall any money be paid on any claim, the subject matter of which shall not have been provided by pre-existing laws, * * *". Iowa Code, 1966, section 8.38 provides "No

state department, institution, or agency, or any board member, commissioner, director, manager, or other person connected with any such department, institution, or agency, shall expend funds or approve claims in excess of the appropriations made thereto, nor expend funds for any purpose other than that for which the money was appropriated, except as otherwise provided by law." No payment may be extracted from the state unless these constitutional and statutory conditions are met. We are not concerned here with payment but with the right to litigate the claim. The subject matter of a state university and the power to operate the institution have clearly been provided in advance, as has the appropriation.

Among the arguments against this doctrine are the artificial distinctions that result from its application. A contractor who builds a road under Highway Commission jurisdiction can sue but if he builds for the Board of Regents he has no legal remedy on what he thought was a contract. A contractee with the state may sue if real property is involved but cannot sue if personal property or his own labor is in issue. The great bulk of the business of the state affords no protection to the contractee. We have found no case that attempts a rational explanation for this rule other than recognition of the historic governmental immunity doctrine. In the modern governmental business climate prevailing today the doctrine must surely be held to have lost its relevancy.

We need not examine the subject in greater detail. The short answer to the problem presented is that reason and justice demand that the state recognize its obligations. Implicit in the principle is the absolute necessity to allow the claimant his day in court.

For the above reasons I would allow this action against the state and overrule prior precedent inconsistent with such result.

MOORE and MASON, JJ., join in this dissent.