C. CAPERS SMITH v. STATE OF NORTH CAROLINA; JAMES E. HOLSHOUSER, GOVERNOR; JOE K. BYRD, CHAIRMAN, STATE BOARD OF MENTAL HEALTH; RALPH SCOTT, ADVISORY BUDGET COMMISSION; DAVID T. FLAHERTY, SECRETARY OF HUMAN RESOURCES; N. P. ZARZAR, COMMISSIONER, MENTAL HEALTH; TREVOR G. WILLIAMS, SUPERINTENDENT, BROUGHTON HOSPITAL

No. 7425SC181

(Filed 6 November 1974)

1. State § 4— action against State — immunity impliedly waived

By entering into a statutorily authorized contract of employment for a specific term of years, the State impliedly waived its immunity from suit for a breach thereof. G.S. 122-25.

2. Venue § 4— action against State — action arising in Burke County — no change of venue

Plaintiff's cause of action for damages for breach of an employment contract arose in Burke County where both a controversy over tape recordings took place and plaintiff's allegedly unjustified dismissal was effected, and the mere fact that plaintiff's discharge was thereafter affirmed by various State officials based in Raleigh does not entitle appellants, as a matter of right, to a change of venue to Wake County. G.S. 1-77.

Judge BALEY dissenting.

ON *Certiorari* to review order of *Ervin, Judge,* 20 October 1973 Session of Superior Court held in BURKE County.

By complaint filed 24 July 1973, plaintiff, C. Capers Smith, alleged that on or about 1 October 1970 Robert Scott, then Governor of North Carolina, appointed him to a six-year term as Superintendent of Broughton Hospital, a State owned and controlled institution located in Morganton, N. C.; that plaintiff accepted the appointment, entered into the employment, and thereafter performed "all of the duties and responsibilities pertaining thereto, properly, efficiently and according to the contract"; that on or about 18 April 1973, "a controversy arose as to whether or not two tape recorder cassettes, which allegedly were made during an official Credentials Committee meeting called by the Superintendent-plaintiff at Broughton Hospital, should or could be released to an agent of the Secretary of the Department of Human Resources"; that, at the time of such demand, the tapes were not in the possession of plaintiff and therefore could not be released by him to said agent for the Secretary; that, because of plaintiff's failure to release the tapes to Dr. Trevor Williams, the Western Regional Commissioner of Mental Health for the State of North Carolina, "the plaintiff was released from his duties and summarily fired from his position as Superintendent of Broughton Hospital"; that shortly thereafter, Dr. N. P. Zarzar, State Commissioner of Mental Health and the immediate supervisor of Dr. Williams, "affirmed the discharge of the plaintiff and subsequently thereto the same was confirmed by telegram from David T. Flaherty, Secretary of the Department of Human Resources"; that thereafter, "the plaintiff is informed and believes . . . that James E. Holshouser, Governor, approved the action previously taken by Dr. Trevor Williams, Dr. N. P. Zarzar and David T. Flaherty, all of said action being taken without due cause or authority" contrary to statute, without any hearing and without due process; that "thereafter a Claim was made by the plaintiff through counsel as provided in N.C.G.S. 122-1.1 by serving upon the Governor and the then Chairman of the Advisory Budget Commission [Ralph Scott] a Claim for severance pay [but] no response was received from any of the parties named in said Claim"; that at the time of his discharge, plaintiff had three years and five months remaining on his six-year employment contract; that "the method used for his release was not only unjustified and without legal authority, but without due cause, and was also done in a manner of harassment, embarrassment, with widely

publicized news coverage and under such circumstances as were designed to embarrass and humiliate said plaintiff, and did thereby deprive him of his livelihood and right to his employment . . . [and] did result in [his] professional defamation"; that, "as a result of the illegal, improper and embarrassing discharge as hereinabove set forth, the plaintiff has been deprived of his salary, as well as other fringe benefits due and to become due, from the State of North Carolina"; and "that, at his age and physical condition, it will be impossible or practically impossible for him to obtain other employment of a comparable nature and is therefore a discrimination against this plaintiff due to age and limited physical ability." Plaintiff then prayed that he recover from the defendants "jointly and severally" $250,000.00 compensatory damages resulting from the above alleged acts.

By motions filed 21 August 1973, defendants State of North Carolina, Holshouser, Scott, Flaherty, Zarzar and Williams (1) moved under Rule 12(b) to dismiss plaintiff's action on grounds that sovereign immunity barred plaintiff's suit and (2) moved for change of venue from Burke to Wake County. Following defendant Chairman of the State Board of Mental Health Joe K. Byrd's answer and "responses" in opposition to both motions, the trial court, by order dated 20 October 1973, denied the same. Defendants-movants excepted and successfully petitioned this Court for writ of certiorari to review the trial court's rulings.

*Hatcher, Sitton & Powell by Claude S. Sitton, and James J. Booker for plaintiff appellee.*

*Blanchard, Tucker, Denson & Cline by Charles F. Blanchard for defendant appellee Byrd.*

*Attorney General Robert Morgan by Assistant Attorney General William F. O'Connell and Assistant Attorney General Parks H. Icenhour for defendant appellants.*

PARKER, Judge.

### THE MOTION TO DISMISS

Appellants assign error in the trial court's denial of their motion to dismiss on grounds that sovereign immunity barred plaintiff's suit. As a preliminary, we must determine the nature of plaintiff's actions insofar as it relates to the State of North

Carolina and the other defendants in their official capacity. In this respect, plaintiff's action is clearly based on contract. Plaintiff has alleged (1) his proper appointment in 1970 to a six-year term as Superintendent of Broughton Hospital, an employment contract authorized by former G.S. 122-25 (later amended, effective 22 May 1973, in 1973 Session Laws, c. 673, s. 2, and repealed, effective 1 July 1973, by Sec. 133 of Ch. 476 of the 1973 Session Laws, "An Act to Further Effectuate the Reorganization of State Government") ; (2) his acceptance of the position, satisfactory performance of its attendant duties, and his dismissal without just cause; and (3) his damages resulting from defendants' breach thereof.

[1] In support of their position that sovereign immunity bars plaintiff's action, appellants, noting that the sovereign cannot be sued in its own courts or elsewhere without its consent, *Electric Co. v. Turner,* 275 N.C. 493, 168 S.E. 2d 385 (1969), argue that no such consent has been given in the instant case. We disagree. We hold that by entering into a statutorily authorized contract of employment for a specific term of years, the State in this case has waived its immunity from suit for a breach thereof. To hold otherwise would attribute to the Legislature an intent to authorize the State's entry into a curious sort of contract, one binding upon the other party but not upon the State. While we rest our decision here upon the somewhat narrow grounds that in this case the express statutory authorization to contract for a specific term of years included by logical implication a waiver of sovereign immunity from a suit for beach of a contract made pursuant to that statutory authorization, we note and commend the trend of recent decisions from other jurisdictions against enforcement of the doctrine of governmental immunity. A truly democratic government should be required to observe the same rules of conduct that it requires of its citizens. Some of the decisions adopting this view are: *Kersten Co., Inc. v. Department of Social Services,* 207 N.W. 2d 117 (Iowa 1973), overruling *Megee v. Barnes,* 160 N.W. 2d 815 (Iowa 1968) ; *V. S. DiCarlo Construction Co., Inc. v. State,* 485 S.W. 2d 52 (Mo. 1972) ; *George & Lynch, Inc. v. State,* 197 A. 2d 734 (Del. 1964) ; *Meens v. Board of Educa.,* 127 Mont. 515, 267 P. 2d 981 (1954) ; and *Regents of University System v. Blanton,* 49 Ga. App. 602, 176 S.E. 673 (1934).

Nor is our decision here inhibited by decisions in our own jurisdiction. Cases cited by appellants are distinguishable. *Elec-*

Smith v. State

*tric Co. v. Turner, supra,* involved a suit for mandatory injunction to control the manner of exercise of discretionary duties of public officials; in the case at bar plaintiff merely seeks monetary damages resulting from the State's alleged breach of contract. In *Construction Co. v. Dept. of Administration,* 3 N.C. App. 551, 165 S.E. 2d 338 (1969), this Court held that plaintiff's suit was not authorized by statute, while in the instant case legislative authority to maintain this suit stems from the fact that plaintiff's contract was itself expressly authorized by statute, G.S. 122-25. *Orange County v. Heath,* 282 N.C. 292, 192 S.E. 2d 308 (1972) concerned an attempt to hold a county liable for damages resulting from an improvidently issued restraining order obtained by the county to enforce a zoning ordinance. A similar factual situation also distinguishes *Town of Hillsborough v. Smith,* 10 N.C. App. 70, 178 S.E. 2d 18 (1970). *Mial v. Ellington,* 134 N.C. 131, 46 S.E. 961 (1903) held that a public office is not private property and that the Legislature has power to abolish offices created by it; in the present case the position which plaintiff held was not abolished when his cause of action arose.

## THE MOTION FOR CHANGE OF VENUE

[2]  As their second assignment of error, appellants contend that the trial court erred in denying their motion for change of venue from Burke to Wake County. G.S. 1-77 provides, in pertinent part:

> "§ 1-77. WHERE CAUSE OF ACTION AROSE.—Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial, in the cases provided by law:
>
> *      *      *      *      *
>
> "(2) Against a public officer or person especially appointed to execute his duties, for an act done by him by virtue of his office; or against a person who by his command or in his aid does anything touching the duties of such officer."

In applying this portion of G.S. 1-77, the Court must determine, *inter alia,* where the cause of action arises, *Coats v. Hospital,* 264 N.C. 332, 141 S.E. 2d 490 (1965). In the case at bar, it is clear that plaintiff's cause of action arose in Burke County

---

where both the controversy over the tape recordings took place and plaintiff's allegedly unjustified dismissal was effected. The mere fact that plaintiff's discharge was thereafter affirmed by various State officials based in Raleigh does not entitle appellants, as a matter of right, for a change of venue to Wake County under the statute.

The rulings of the trial court are

Affirmed.

Chief Judge BROCK concurs.

Judge BALEY dissents.

Judge BALEY dissenting.

Plaintiff has brought an action against the State. Any waiver of the State's immunity from suit must be by "plain, unmistakable mandate" of the Legislature and cannot be by implication or construction. *Orange County v. Heath,* 282 N.C. 292, 296, 192 S.E. 2d 308, 310; *State ex rel. State Bd. of Public Affairs v. Principal Funding Corp.,* 519 P. 2d 503 (Okla. 1974). There being no clear waiver of immunity in the statute authorizing his employment, it follows that plaintiff cannot maintain this action. The order of the trial court denying defendant's motion to dismiss should be reversed.