# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| MOSAICA EDUCATION, INC., | : | |
| a Delaware corporation, | : | |
| | : | **C.A. No: K10J-00196 TBD** |
| _____Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ACADEMY OF DOVER, INC., | : | |
| d/b/a ACADEMY OF DOVER | : | |
| CHARTER SCHOOL, | : | |
| | : | |
| Defendant. | : | |

*Submitted: April 1, 2015*
*Decided: April 7, 2015*

***Upon Consideration of Garnishee's***
***Motion to Dismiss***
**DENIED**

**ORDER**

William W. Pepper, Sr., Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff.

James D. Taylor, Jr., Esquire, and Allison J. McCowan, Esquire, Saul Ewing, LLP, Wilmington, Delaware for Defendant.

Laura L. Gerard, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware for the Office of the State Treasurer.

Young, J.

## SUMMARY

Mosaica Education, Inc. ("Plaintiff") and Academy of Dover, Inc., ("Defendant") entered into a contract relating to charter school management services to be provided by Plaintiff to Defendant, a charter school operating in Delaware. At some point, relations between the two parties broke down, leading, eventually, to the award of damages against Defendant for breach of contract, ordered by an arbitrator. The Delaware Court of Chancery affirmed this award in 2010. Since that time, Plaintiff has been thwarted in its effort to satisfy this judgment.

Seeking satisfaction, Plaintiff filed a writ of garnishment directed at the Office of the State Treasurer ("Garnishee," or "Treasurer"). Garnishee responds to Plaintiff's writ by filing the present Motion to Dismiss. Citing to case law that is over one hundred years old, Garnishee contends that Delaware, by virtue of sovereign immunity, prevents the imposition of writs of garnishment upon the Treasurer. By contrast, Plaintiff points to Delaware Supreme Court authority, as well as statutory authority, which Plaintiff argues supercedes the century old prohibition against garnishment.

The Supreme Court and the Legislature have modified the original rule that the Treasurer is not subject to garnishment. Although the precise factual circumstances forming this case were not specifically identified by the Supreme Court or the Legislature, the extension of the overarching policy is a logical step. Thus, Garnishee's Motion to Dismiss is **DENIED**.

## FACTS AND PROCEDURES

Preceding the current suit, on February 1, 2010, was a judgment for Plaintiff

2

against Defendant in the amount of $962,724.68, issued by the Delaware Court of Chancery. The Court of Chancery confirmed the award of an arbitrator, arising from Defendant's breach of contract. Plaintiff had been retained by Defendant, a charter school operating in Delaware, for charter management services.

Following this judgment, Plaintiff has been unable to collect the sums owed to it. As per Plaintiff, the amount due has now, given the accrued interest, risen to $2,019,956.30. On February 2, 2015, Plaintiff served the Treasurer with an Attachment Facias Garnishment, directing the Treasurer to satisfy the amount owed by Defendant. The Treasurer moves to dismiss this writ of garnishment.

### DISCUSSION[1]

The question presented is plain: whether the State Treasurer is subject to a writ of garnishment, where the State's affiliate has a debt owing to a third party. The parties are in agreement that this Court, albeit in 1900, considered the issue of whether the Treasurer is subject to garnishment. In *President, etc. of Farmers' Bank of Delaware v. Ball*, that Court, addressing the issue before it, answered the question in the negative.[2] Since that time, however, both the Supreme Court of Delaware and the Legislature have reviewed the concern. The Supreme Court in *George & Lynch, Inc. v. State*, considered this Court's holding in *President,* reversing it as it applied

---

[1] Defendant filed a memorandum in support of Garnishee's motion to dismiss. The memorandum, largely, joins Garnishee's arguments. Defendant does, however, raise an issue concerning 14 *Del. C*. § 512(14). The Court address this contention *infra*.

[2] 46 A. 751, 752 (Del. Super. Ct. 1900) ("[w]e hold, therefore, that the state treasurer in this case is not liable to attachment").

3

to the case before it.[3] The Legislature specifically acted on the garnishment question by enacting 10 *Del. C.* § 3503, which subjects public officers to the attachment laws of the State. It is with these three authorities, and their respective effects on one another, that the Court must contend.

By its Motion to Dismiss, Garnishee, here the State Treasurer, argues that *President* is controlling. That 1900 decision declared that the Treasurer was protected by sovereign immunity from writs of garnishment.[4] Therefore, as per Garnishee, Plaintiff could not require the Garnishee to satisfy the debt owed it by Defendant, a charter school, operating under the auspices of the State. Plaintiff, by contrast, argues that this Court's holding in *President* is archaic, having been supplanted by both the Supreme Court and the Legislature. Plaintiff's point is well taken. Therefore, Garnishee's motion is **DENIED**.

The exact extent of *George & Lynch's* overruling of *President* is arguable. However, it is evident that the Supreme Court's decision was intended to supercede *President*'s ruling, in situations such as the case at bar. The *George & Lynch* Court stated that *President* was overruled where, "it should be contrary to the views we have expressed...."[5] The views expressed by *George & Lynch* were that government entities are not immune, as per the doctrine of sovereign immunity, from suits by private third parties sounding in breach of contract. The Supreme Court so held as,

---

[3] 197 A.2d 734 (Del. 1964).

[4] *President,* 46 A. at 752.

[5] *Id*., at 736-737.

"any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens."[6] This policy reasoning, applied to the facts in the instant matter, calls for the grant of Plaintiff's writ of garnishment. To hold otherwise, would be to prevent Plaintiff indefinitely from recovery against Defendant – a party judicially found to have breached a valid contract. It would, plainly, be unjust to allow Defendant to continue to avoid the consequences of its adjudicated breach. Government entities, just as private parties, must perform their contractual obligations, or else be subject to damages for breach. As concerns the instant matter, a conclusion more consistent with the holding in *President,* that the Treasurer is immune from writs of garnishment, would offend the concept expressed in *George & Lynch*, indicating that the Supreme Court's reversal of *President* applies here.

Additionally, 10 *Del. C*. § 3503 supports the grant of the writ of garnishment. § 3503(a) directs "any officer of the State...whose duty it is to pay such employees compensation from funds of the State," to "appear and answer as other garnishees are required to do." That would seem to be a clear manifestation of the Legislature's intent to abrogate holdings such as *President's*, shielding the Treasurer from garnishment under the doctrine of sovereign immunity. There does exist § 3503(b)'s definition of "employee" as "any and every *person* performing any and every form of labor and work for the State."[7] Defendant, as a charter school, certainly performs a service for the State – to wit, the education of its young citizens. Moreover, in most

---

[6] *Id.,* at 736.

[7] 10 *Del. C.* § 3503(b) (emphasis added).

contexts, unless otherwise specified, "persons" includes all legal entities, including charter schools. There is no indication of the contrary here. Section 3503 displays the Legislature's statement that the Treasurer may be subject to writs of garnishment. Given *George & Lynch's* policy declaration, this is an appropriate application of the writ of Garnishment to the Treasurer.

Finally, Defendant requests this Court, pursuant to 14 *Del. C.* § 512(14), to declare Plaintiff's execution of judgment temporarily estopped, until Defendant has acquired sufficient funds. That is not called for.

14 *Del. C.* § 512(14) states in relevant part that the board of each charter school shall certify annually to the Department of Education that, "prior to any payment of fees or other sums to any *management company* employed by the board, the board will insure that sufficient revenues of the school are devoted to adequately support the school's proposed education program."[8] Defendant claims that, given this requirement, any satisfaction of the debt owed Plaintiff would, without a more thorough investigation of Defendant's financial wherewithal, put Defendant in danger of violating this section of the statute. Therefore, Defendant seeks a formal declaration that no funds are to be used to satisfy the debt to Plaintiff, a *management company*, until § 512(14)'s demands are met.

A review of § 512 in its entirety undercuts Defendant's interpretation of subsection § 512(14). The opening lines of the statute read as follows: "charter school applications shall be in the form established by the approving authority and shall be

---

[8] 14 *Del. C.* § 512(14) (emphasis added).

approved if, after the exercise of due diligence and good faith, the approving authority finds the proposed charter demonstrates that...["9] Opening this prologue are subsections (1)-(16), articulating the necessary elements to be included in the charter, in order for it to be approved. The very nature of this statute, which is prescriptive referring to the planning stages of a charter school's existence, does not seem to fit the circumstances presented by Plaintiff's and Defendant's dispute. The statute speaks to an application for a charter school. Section 512(14) requires the charter to demonstrate that it will have a system in place for annual reports of financial status to the Department of Education. Granted, this financial status explicitly refers to management companies, such as Plaintiff, but it appears to focus on a different period of time in this relationship. That is, the statute would seem to warn against the precise situation Defendant finds itself in – accruing debt to a management company, and being unable to meet both this debt, and the expense of the school's education program. Indeed, the statute implies that such a situation would be "grounds for revocation of the charter."[10] Most importantly, it would be a stretch to hold that a statute, which concerns the application for a charter school, controls events following the grant of the charter, and the incursion of debt to management companies. At best, the statute can be said to govern the debt as it first comes due; that is, the initial determination that Defendant could not both pay Plaintiff, and have funds for its programs. However, at this point, there has been an adjudication of this relationship,

---

[9] 14 *Del. C.* § 512.

[10] 14 *Del. C.* § 512(14).

finding a breach of contract. We are further along in the life of this School, than § 512 contemplates.

Given the determination that Defendant breached its contractual relationship with Plaintiff, it would, further, be against Delaware policy to declare Defendant absolved of liability until that time when Defendant is somehow determined to be financially able. As has been mentioned previously, the Supreme Court made clear the inequity in permitting state entities to enter into contracts with private third parties, and then escape liability by the doctrine of sovereign immunity.[11] Interpreting § 512(14) in the manner suggested by Defendant, would offend that Supreme Court reasoning. Defendant, as a government affiliate, would be free to contract with a management company, while maintaining the possibility that the performance of its obligations under the contract, could be indefinitely postponed. Such a "conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens."[12]

## CONCLUSION

For the foregoing reasons, Garnishee's motion is **DENIED**.

**IT IS SO ORDERED**.

/s/ Robert B. Young
J.

RBY/lmc
oc:   Prothonotary

---

[11] *George & Lynch*, 197 A.2d at 736.

[12] *Id.*

cc:    Counsel
       Opinion Distribution